18590

J. C. McCRARY, Appellant, v. STATE of South Carolina et al., Respondents

(152 S. E. (2d) 235)

16

*Lincoln C. Jenkins, Jr., Esq.*, of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General, Edward B. Latimer, Assistant Attorney General,* and *Paul R. Hibbard, of Counsel,* all of Columbia, and *B. O. Thomason, Jr., Solicitor,* of Greenville, *for Respondent,*

January 4, 1967.

LIONEL K. LEGGE, Acting Justice.

Appeal from a circuit court order denying a writ of *habeas corpus.*

At the March, 1962, term of the Court of General Sessions for Greenville County appellant was charged, in one indictment, with housebreaking, safecracking and grand larceny, committed on or about January 13, 1962, at Gibbs Pharmacy; and in another indictment, with housebreaking and grand larceny, committed on or about January 13, 1962, at the place of business of Triangle Construction Company. By agreement between his counsel and counsel for the State, he was tried under both indictments at the same time. At the close of the testimony for the State appellant through his counsel announced that he would offer no testimony. The jury returned a verdict of guilty on all counts, and the trial judge thereupon sentenced appellant on the indictment first above mentioned to life imprisonment, and on the second to a concurrent term of five years. Upon his appeal to this court, in *propria persona,* the judgment was affirmed, *State v. McCrary,* 242 S. C. 506, 131 S. E. (2d) 687. (Opinion filed June 25, 1963.)

On July 29, 1963, appellant in *propria persona* petitioned the Honorable Frank Eppes, Judge of the Thirteenth Judicial Circuit, for a writ of *habeas corpus,* alleging that

his detention in the State Penitentiary was unlawful and that he was entitled to release from custody because: (a) he "was denied due process of law"; and (b) "the court-appointed attorney did not afford competent or good faith representation". At the hearing before Judge Eppes, October 7, 1963, on the application for the writ, the petitioner was represented by Mr. Herman E. Cox of the Greenville Bar, who stated that, as he had advised the petitioner, the only issue raised by the petition was that the petitioner had not had the benefit of competent counsel at his trial, which issue had been disposed of in *State v. McCrary, supra;* but that since his client had said that he did not receive a complete record of his trial, he would ask that the court defer consideration of the matter long enough to enable him to obtain the record from the court stenographer and consider it in the light of his client's contention. The petitioner was then sworn and under examination by the Solicitor and by his counsel testified in regard to the matters before mentioned as follows: (1) That at his trial he was represented by Mr. Harley Wooten, who had been retained by petitioner's family for the purpose of having the trial postponed; that he could not obtain a postponement; that he represented petitioner during the trial, advised him not to testify or offer testimony, and argued the case before the jury; and (2) that the record that he had received from the Solicitor was not complete, evidence favorable to the petitioner having been omitted. Also present at the hearing before Judge Eppes was Mr. Wooten, a member of the Greenville Bar, who testified: that he had been engaged in the practice of law for twenty years, about one-half of his practice being on the criminal side of the court; that he had been retained to represent the petitioner and had represented him to the best of his ability throughout the trial; that the State's case was based on circumstantial evidence; and that the decision not to call witnesses for the defense was made after discussion with petitioner, who agreed with his counsel that his case would be stronger if no further evidence were offered. By his order

dated February 1, 1964, Judge Eppes, reciting the two grounds of the petition for the writ, and finding from the evidence that at his trial the petitioner had been faithfully and adequately represented by retained counsel, and that petitioner's testimony had failed to convince the court either that the petitioner had been denied due process of law or that his counsel had not afforded him competent representation, denied the petition.

On January 24, 1964, a few days before Judge Eppes' decision on the petition before mentioned, appellant filed in the United States District Court for the Eastern District of South Carolina, Columbia Division, a petition for a writ of *habeas corpus,* whch petition was by order of the Honorable J. Robert Martin, Jr., United States District Judge, dated March 3, 1964, dismissed as premature, without prejudice to the petitioner to refile, if so advised, after exhaustion of remedies available in the courts of South Carolina.

On March 25, 1964, appellant in *propria persona* petitioned the Court of General Sessions for Greenville County for a writ of *habeas corpus,* alleging as grounds therefor the same matters that had been alleged in his previous petition of July 29, 1963, and in addition thereto, among other things, that he was being detained without due process of law because: (1) the evidence against him was false and illegal; (2) he was tried on two indictments consolidated; (3) he was convicted on circumstantial evidence; (4) certain clothing used in evidence against him had been obtained without a search warrant; (5) the trial court unconstitutionally denied a continuance; (6) the trial judge had stated to the jury that it would be better if they would not recommend mercy; (7) the State had sent him a false copy of his trial proceedings for the purpose of his appeal; (8) this court had refused to order a correct trial transcript; and (9) he had been forced by the State to perfect his appeal to this court, heard in June, 1963 (*State v. McCrary, supra*), from a false transcript. By order dated July 2, 1964,

Judge Eppes dismissed the petition, holding that the petitioner had been given a full hearing on all these matters on October 7, 1963.

By petition dated June 8, 1964, appellant sought in the United States District Court for the Eastern District of South Carolina, Columbia Division, a writ of *habeas corpus*, upon the grounds:

1. That the evidence was insufficient to sustain his conviction;

2. That the trial court erred in permitting him to be tried on two separate indictments;

3. That he was illegally arrested for "investigation" of the crime for which he was ultimately convicted;

4. That some of the evidence used by the State at his trial was obtained by illegal search and seizure;

5. That the State knowingly used trick and planted evidence and perjured testimony at his trial; and

6. That he was inadequately represented by counsel at his trial.

In his order on that petition, dated July 22, 1964, the Honorable J. Robert Martin, Jr., United States District Judge, held that the two contentions that had been presented to and passed upon by this court in *State v. McCrary, supra, i. e.*, that the evidence was insufficient to sustain the conviction, and that the trial court erred in permitting the petitioner to be tried on two separate indictments at the same time, raised no federal constitutional question; that the other four grounds of the petition, *i. e.*, those numbered 3, 4, 5 and 6 above, could not be considered by the District Court because they had not been presented to the highest State court; and that the petitioner must exhaust the remedies available to him in the courts of the State before he could seek relief in the District Court. The order further adverted to the fact that the petitioner had previously presented all of those questions to the District Court in his petition for a writ of *habeas corpus* in January, 1964, which had been

dismissed as premature by the District Court's order of March 3, 1964, and that the petition *sub judice* did not allege that any action had been taken to exhaust state remedies since the order of March 3, 1964. The order of July 22, 1964, stated further that the petitioner was also asserting: that when he perfected the appeal from his conviction to the Supreme Court of South Carolina he had requested counsel and a stenographic transcript of the trial testimony; that he was denied assistance of counsel and that the transcript furnished to him was incomplete and incorrect; and that both of those points had been presented to the Supreme Court of South Carolina. The order of July 22, 1964, stated further that the aforesaid assertions of the petitioner were not supported by a statement of the facts involved, and that the record required amplification on those points before a decision could be made as to whether or not a constitutional question was involved. The order concluded by granting to the petitioner leave to proceed with the petition for a writ of *habeas corpus in forma pauperis,* and by requiring the respondents (the State of South Carolina and Ellis C. MacDougall, Director of the Department of Corrections) to show cause why the writ should not be granted.

Under date February 19, 1965, the Honorable J. Robert Martin, Jr., United States Judge, issued a further order on the petition. It recited that the petitioner claimed: that he had appeared in person before the Supreme Court of South Carolina to argue a motion for bail pending appeal, and had pointed out to the court at that hearing that he had been furnished an incomplete and incorrect transcript of his trial for use on appeal; that he had never been furnished a correct transcript; that he had not been allowed to use the exhibits from his trial for the purpose of appeal; that by letter addressed to the Chief Justice of South Carolina he had requested that counsel be appointed to represent him on appeal, but that counsel had not been furnished him; that he had been informed by letter from the Supreme Court that if he and the Attorney General's office could not agree upon a

trial transcript the matter would have to be settled by the trial court; and thereafter on several occasions he had applied to the Attorney General and to the trial court for a correct transcript, but had received no reply. The order proceeded to hold that the petitioner, if so advised, should move before the Supreme Court of South Carolina to reinstate his appeal and appoint counsel to represent him; that if such a motion were granted the petitioner would be put back in the same situation that he was in immediately after his trial in 1962; and the matter of furnishing the stenographic transcript of the trial would be one of the problems to be solved preparatory to the appeal. It concluded by denying the petition without prejudice to the petitioner to refile if so advised, following exhaustion of the state remedy thereinbefore detailed.

Thereafter appellant in *propria persona* filed in the Supreme Court of South Carolina a petition dated March 2, 1965, captioned "J. C. McCrary, Movant, v. State of South Carolina, Respondents", praying that the court reinstate his appeal for the following reasons:

1. That the court failed to appoint a lawyer to assist him with the appeal;

2. That the transcript of the trial, as furnished him by the State for the purposes of the appeal, was incorrect and incomplete, with parts of the testimony omitted; and

3. That the court failed to produce the exhibits from the trial for his use in said appeal.

By order of the Supreme Court dated March 12, 1965, captioned "J. C. McCrary, Petitioner, v. The State of South Carolina", and reciting that the petitioner had filed a petition to reinstate his appeal "in the above case", Lincoln C. Jenkins, Esq., Attorney, of Columbia, South Carolina, was appointed as counsel for the petitioner "for the purpose of moving, in open court, upon the grounds stated in said petition and upon such additional grounds as he may be advised, for the reinstatement of said appeal."

Under date June 21, 1965, appellant petitioned the United States District Court for the Eastern District of South Carolina, Columbia Division, for a writ of *habeas corpus,* upon which, on July 13, 1965, an order was issued by the Honorable J. Robert Martin, Jr., United States District Judge. That order recited:

That the order of the District Court entered on February 19, 1965, terminating a prior *habeas corpus* petition filed by McCrary had provided that "the only question ripe for consideration in this Court was a claimed denial of counsel on appeal from a state criminal conviction, and that petitioner should exhaust the remedies available to him in the state courts on that question";

That the return of the respondents (MacDougall, Director, Department of Corrections, and The State of South Carolina, *et al.*) to the petition *sub judice* revealed that on March 2, 1965, the petitioner had moved the Supreme Court of South Carolina to reinstate his appeal, and that on March 12, 1965, that court had appointed counsel for the petitioner for the purpose of moving in open court for the reinstatement of said appeal; and

That the said petition alleged that the motion for reinstatement of the appeal had not been heard, that the petitioner had had no communication from his appointed attorney, and had had no reply to his letters of inquiry addressed to said attorney and to the Supreme Court of South Carolina.

The order, reciting further that unless the pending motion for reinstatement should be heard and disposed of at the next ensuing term (October, 1965) of the Supreme Court of South Carolina, the District Court would assume jurisdiction and hear the petition on its merits, ordered that the petition be held in abeyance until after the October term of the Supreme Court of South Carolina, and directed that a copy of the order be served upon the Attorney General of South Carolina, upon Lincoln C. Jenkins, Esq., and upon the petitioner.

On September 14, 1965, Lincoln C. Jenkins, Jr., served upon the Assistant Attorney General a Notice of Motion for Reinstatement of Appeal, the same being captioned "The State, Respondent, against J. C. McCrary, Appellant", giving notice that said counsel on behalf of said appellant, pursuant to the order of the Supreme Court of South Carolina dated March 12, 1965, would move before said court on October 14, 1965 "for the reinstatement of appellant's appeal from his conviction during the 1962 March Term of the Court of General Sessions for Greenville County", upon the grounds:

1. That appellant was· denied the right to counsel on appeal;

2. That appellant was not furnished with a true, accurate and certified copy of the transcript of the trial proceedings; and

3. That appellant was not furnished with the exhibits of the trial proceedings for scrutiny by the Supreme Court.

On September 14, 1965, the Honorable E. B. Latimer, Assistant Attorney General, acknowledged service of the aforesaid notice as follows:

"Service of the Notice of Motion for Reinstatement of Appeal in the case of J. C. McCrary v. State is acknowledged this 14th day of September, 1965, and copy thereof is retained."

The Attorney General having made return to the motion, denying the allegations upon which it was grounded, the motion was heard by the Supreme Court of South Carolina, which under date October 15, 1965, issued its order, captioned "The State, Respondent, against J. C. McCrary, Appellant", and reading as follows:

"This matter comes before this Court upon motion of the defendant to reinstate his appeal from orders of the lower Court denying his petition for a writ of *habeas corpus*. The record fails to show that the defendant's appeal from such orders has ever been dismissed.

"After a hearing and it appearing proper,

"It Is Ordered that the appeal of the defendant from such orders is deemed pending in this Court.

"It Is Further Ordered that the cause is hereby remanded upon motion of the State to the lower Court for the purpose of perfecting the record in the matter and for the consideration by the lower Court of such further grounds as the defendant may desire to assert, and the appeal will be heard upon the record so made.

"It Is Further Ordered that Lincoln C. Jenkins, Esquire, is hereby appointed counsel to represent the defendant in all matters pertaining to this appeal."

Under date November 18, 1965, appellant wrote to his counsel, Mr. Jenkins, enclosing eleven pages of testimony, arguments, statements and rulings claimed by him to have been omitted in the transcript of the trial proceedings as received by him, said enclosure being prefaced by the following handwritten inscription: "This ·is a transcript of the trial that does not show on the record sent me. I made this from what I remember of the trial, J. C. McCrary."

Under date January 11, 1966, appellant petitioned the United States District Court for the Eastern District of South Carolina, Columbia Division, alleging that he had exhausted his available state remedies and renewing his application for a writ of *habeas corpus*. Upon this petition the Honorable J. Robert Martin, Jr., United States District Judge, issued his order, dated January 31, 1966, requiring that the State of South Carolina, named therein as the respondent, show cause why the writ should not issue, and directing that copies of the said order be served upon the Attorney General of South Carolina and upon Lincoln C. Jenkins, Esq., attorney for the petitioner.

On May 6, 1966, a hearing was held in the court room of the Greenville County Court House before the Honorable Frank Eppes, Judge of the Thirteenth Judicial Circuit. Present, for the State, were B. O. Thomason, Jr., Esq.,

Solicitor of the Thirteenth Judicial Circuit, and Edward B. Latimer, Assistant Attorney General; for the Appellant, Lincoln C. Jenkins, Esq. Also present were: Mrs. Betty G. Gaze, official court stenographer at the trial of appellant in March, 1962; Harley Wooten, Esq., appellant's counsel at the trial; and the appellant himself. Also present was Mrs. Elizabeth R. Bobo, official court stenographer for the Thirteenth Judicial Circuit, who took down the proceedings in shorthand and thereafter, under date August 28, 1966, certified for the present record her typewritten transcript thereof.

Mr. Latimer made the following statement:

"May it please the Court, this matter is back before your Honor under order of the State Supreme Court dated 15 October, 1965.

"The State at this time proposes to incorporate in a transcript of record to the State Supreme Court the following documents:

"The South Carolina penitentiary records concerning the petitioner;

"The records in the office of the Greenville County Clerk of Court concerning the arrest and indictment and the sentence of McCrary;

"The transcript of record previously before the State Supreme Court;

"The trial transcript concerning cases 132 (the indictment for housebreaking, safecracking and grand larceny at Gibbs Pharmacy) and 133 (the indictment for housebreaking and grand larceny at Triangle Construction Company) held in the Greenville County Court of General Sessions on 22 March, 1962;

"The decision of the State Supreme Court handed down on 25 June, 1963, in the case of the State versus McCrary, 242 South Carolina 506;

"The petition for a writ of *habeas corpus* dated 29 July, 1963;

"The transcript of the *habeas corpus* proceeding held before your honor on the 7th of October, 1963;

"The order of your honor dated 1 February, 1964;

"The order of Federal District Court Judge J. Robert Martin, Jr., dated 3 March, 1964;

"Petition for a writ of *habeas corpus* in the Greenville County Court of Common Pleas dated 25 March, 1964;

"The order of your honor dated 26 July, 1964;

"The order of Federal District Court Judge Martin dated 22 July, 1964;

"The order of Judge Martin filed on 19 February, 1965;

"The order of Chief Justice C. A. Taylor dated 3/12/1965;

"The order of Judge Martin dated 13 July, 1965;

"The order of the South Carolina Supreme Court dated 15 October, 1965;

"The letter from the Petitioner McCrary to his counsel, Mr. Jenkins, dated 18 November, 1965, in which he sets out the parts of the transcript that he alleges were omitted;

"The order of Judge Martin dated 31 January, 1966.

"And the State proposes to incorporate in the transcript of record to the State Supreme Court the hearing, or transcript of this hearing.

"As far as the State knows, this constitutes all of the orders and transcripts that are in existence concerning J. C. McCrary.

"This hearing, in accordance with the mandate of the South Carolina Supreme Court, is held in order for the State and counsel for McCrary to settle on a transcript of record for a second appeal to the State Supreme Court.

"We are also here in accordance with that order for McCrary to enter any other allegations that he may wish to, to go into this transcript of record to be submitted to the State Supreme Court.

"So far as we know, all of his allegations are contained in these various petitions and orders and the latest allega-

tions would be contained in his letter to his counsel dated 18 November, 1965." (Parentheses ours.)

No objection was made to the State's proposal to include in the transcript for the present appeal the records, orders, transcripts and other documents referred to in Mr. Latimer's statement above quoted. They, and the certified transcript of the proceeding and testimony at the hearing before Judge Eppes on May 6, 1966, are included in the transcript of record, agreed to between counsel for the appellant and counsel for the State of South Carolina, now before us.

We note that among the proceedings and orders herein-before mentioned some, by caption or substance or both, indicate that the matter now before us is in the nature of a rehearing of the appeal from the 1962 conviction and sentence—others, by caption or substance or both, that it is an appeal from the order or orders of the circuit court denying a writ of *habeas corpus*. Lest such variations engender doubt as to the purpose or intent or extent of this opinion, let it be understood now that we shall here treat the present appeal as relating both to the conviction and sentence and to the proceedings in *habeas corpus,* and that we intend to consider all issues raised by the appeals in both matters.

The original appeal from the conviction and sentence presented two issues:

1. Was the evidence sufficient to sustain the conviction?

2. Did the circuit court err in trying the defendant on two indictments at the same time?

At the hearing before Judge Eppes on October 7, 1963, the only issue presented by the petition for the writ of *habeas corpus,* as appellant's counsel, Mr. Cox, then frankly admitted, was whether or not the petitioner had been competently represented by his counsel at his trial. In his testimony at the October 7, 1963, hearing, appellant contended also that the transcript of the trial proceedings as furnished him by the Solicitor for the purposes of his appeal was incomplete, in that certain evidence that had been

admitted during the trial had not been included in the transcript. In his order of February 1, 1964, denying the petition, Judge Eppes considered the testimony relative to the contention of incompetent representation and found that it failed to sustain that contention and that on the contrary he was convinced from all of the testimony that petitioner's counsel had throughout the trial represented him faithfully and adequately. So far as the record before us shows, there was no appeal from the order of February 1, 1964.

At the second hearing before Judge Eppes, on May 6, 1966, much testimony was taken, including that relating to appellant's claim that portions of the proceedings and testimony at his trial had not been included in the trial transcript furnished him for the purposes of his appeal from conviction and sentence. The May 6, 1966, hearing was treated by counsel and the court as being for the purpose of amplifying the record for appeal here; it was not treated as a renewal of the application before Judge Eppes for a writ of *habeas corpus;* and no order was issued by Judge Eppes thereon. On the record as thus amplified, appellant's counsel notes the following exceptions for the purposes of this appeal:

"1. That there was insufficient evidence to support a guilty verdict.

"2. That it was error for the State to try appellant for two separate crimes upon the same indictment at the same time.

"3. That his honor Judge Eppes, in his order dated 1 February, 1964, erred when he held that the appellant had been represented by competent counsel at his trial.

"4. That there is insufficient evidence to support a holding that the court records, trial transcript and hearing transcripts are correct."

Summarizing, it appears that the following are all of the questions sought to be presented on appeal to this court from any judgment or order of the lower court concerning appellant's trial:

1. Was the evidence sufficient to sustain the conviction?

2. Was any portion of the trial proceedings or testimony omitted from the transcript as furnished appellant for the purposes of his appeal from conviction and sentence; and if so, does such omission require that the conviction be set aside?

3. Does the record now before us warrant the conclusion that appellant was not competently represented by counsel at his trial?

4. Was the trial judge in error in trying appellant on two separate indictments at the same time?

We shall consider these questions in the order stated above.

The evidence for the State at the trial of appellant in 1962, as incorporated in the official transcript thereof furnished to appellant for the purpose of his appeal, was in the record before this court on that appeal and is in the record now before us. Following is a summary of it.

In the early morning of January 13, 1962, H. H. Gibbs, a pharmacist and owner of a drug store located at the corner of Falls and Broad Streets in the City of Greenville, went to his place of business in response to a call from the police. Upon his arrival there he found that the front door of the store, which faces on Broad Street, had been forced open and that one of his two safes was missing. The other safe had been moved to the back door, which had also been forced open. The missing safe, valued at about seventy-five dollars, contained about fifty dollars in money, two watches, a ledger, and other items.

About five o'clock on the morning of January 13, 1962, the temperature being between sixteen and twenty degrees, officers Williams and Campbell of the Greenville Police Department were driving on Falls Street, when they saw a Negro male of medium, rather slender, build, wearing a brown hat and coat, run out of the side door of Gibbs Pharmacy. That door, fronting on Falls Street, was propped

open. They pursued him in the car for a short distance, to a parking lot, where Williams jumped out of the car to take up the pursuit on foot. The chase led into an alley, in which there was a retaining wall that was almost level with the ground on the side that they were approaching, but which dropped off on the other side some eight or ten feet. At the bottom of this drop were bricks, broken bottles and other trash. Over this wall the pursued person, running, disappeared. Williams climbed down the wall, losing sight of his quarry while doing so; and when he last saw him he was disappearing around a building near a railroad track. At the bottom of the wall Williams found the brown hat that the pursued had been wearing. It was a hat similar to one that appellant had been known to wear.

Shortly thereafter, taxi stands were contacted and told to notify the police should anyone in the vicinity call for a taxi. Among those so notified was the dispatcher at the Harlem Cab Company.

About six o'clock that morning, appellant went to the home of Daisy Cunningham, at 225 East Broad Street in Greenville, and asked her to call a taxi for him, which she did. He was limping. Jerome Downs, Harlem's dispatcher, receiving the call, directed cab number 207, driven by Otto Baker, to go to the East Broad Street address; and notified the police of this development. Baker went to the address mentioned, appellant got into his cab, and they drove to Fieldcrest Village, where appellant's home is located. At one point during the trip, appellant complained that his leg was hurting. Baker noticed that he was limping as he left the taxi.

Meanwhile, other police officers arrived at the scene of the break-in to assist those already there. On Broad Street, approximately a hundred feet from the drug store, the police found a Lincoln automobile. Its back seat had been removed from its normal position and moved close to the back of the front seat. There was a fresh indentation on the

floor. Despite the very low temperature, the car's radiator and motor were warm. Inside the car the officers found various papers belonging to appellant.

Having been contacted by the cab company several police officers and the taxi driver went to appellant's residence. They found him in bed. His ankle was swollen, his wrist was cut; blood was on his right hand; there were abrasions on both of his knees. A white shirt, which had blood on it, and a brown suit, which fitted the description of the one worn by the person who earlier that morning had been seen running out of the side door of Gibbs Pharmacy, were found in the bedroom and were given to the identification officers. Appellant was arrested and taken to police headquarters.

On the afternoon of January 13, 1962, Mark Forrester, a bondsman, came to police headquarters to get some money from appellant so that appellant's wife could buy some groceries. Appellant informed Forrester that there was some money in the clothing that the police were holding. Forrester thereupon asked J. D. Bigham, one of the identification officers, to get the money from appellant's clothes. In searching the trousers, which were in custody, for the money, Bigham happened to discover the ring part of a metal hasp.

That afternoon, the missing safe was found near Reedy River, west of Church Street. It was lying on its front; the bottom plate and much of the insulation had been removed; and a hole had been made in its bottom. In the vicinity of the safe were found papers of the Gibbs Pharmacy, some change, some of the insulation and the bottom plate, of the safe. A hundred and fifty or two hundred feet away, the officers found a crowbar, a sledge hammer, and a pick.

That night appellant was taken to the Greenville General Hospital for medical treatment. Dr. Counts, who administered to his injured leg in the emergency room, and who at that time did not know that he was under arrest, was

told by appellant that he had been injured as the result of a fall from a brick wall.

The following morning, which was a Sunday, Officers Berry and Jennings began looking for a door from which the ring portion of the metal hasp might have come. Their search led them to the Camperdown Way construction site of Triangle Construction Company. They inspected the tool shed and discovered that the staple or ring part of the hasp on one of its doors was missing. The lock for this door was lying on the ground near the door. They removed the remaining part of the hasp, nailed up the door, and returned to police headquarters.

On Monday, January 15, 1962, the officers went back to the Triangle Construction Company site. Further check confirmed their suspicion that the tool shed had been broken into, and that a crowbar, a sledge hammer, and a pick, having an aggregate value of more than twenty dollars, were missing. The crowbar, sledge hammer and pick that had been found at Reedy River near the safe were identified as those belonging to Triangle Construction Company.

Elmer T. Miller, a special agent of the Federal Bureau of Investigation, expert in chemistry, received from the Greenville Police Department for analysis and comparison various objects, among them: (1) appellant's brown coat, brown trousers and white shirt; (2) the crowbar and pick above referred to; (3) some of the insulation from the broken safe. He testified that the specimen of safe insulation sent to him was tan-gray color and was natural cement, a product that is simply mined and run through a kiln and varies in appearance, not being standardized. He testified that by scraping the coat and the trousers over a sheet of paper he recovered numerous pieces of safe insulation of the same type and color as the specimen referred to above; and that from the shirt he recovered one small piece which under the microscope he could identify as natural cement safe insulation of the same type and color. The crowbar and

pick had large deposits of the same material, identical under microscopic and analytical tests. In addition to the articles above mentioned, there were sent to him a brown hat, a gray coat, and a pair of black shoes. From the hat and the gray coat he recovered nothing; from the shoes, nothing that he could identify.

As pointed out in *State v. McCrary, supra,* appellant is in no position to argue here that the evidence was not sufficient to require submission to the jury of the issue of his guilt or innocence. Circuit Court Rule 76; *State v. Miller,* 223 S. C. 128, 74 S. E. (2d) 582; *State v. Howell,* 224 S. C. 277, 78 S. E. (2d) 579. In *State v. McCrary, supra,* waiving the rule *ex gratia,* we considered the evidence in the transcript of record (which appellant now contends was incomplete) and concluded that it was sufficient to take the case to the jury. On the present appeal we have again, *ex gratia,* considered all of the evidence in the transcript now before us, including eleven pages of so-called testimony, objections and statements that appellant charges were omitted from the transcript on the former appeal; and we again conclude that it was quite sufficient to require that the trial judge submit the issue of guilt or innocence to the jury. The allegedly omitted portions of the trial proceedings, which consist mainly of purported cross examination of the State's witnesses by counsel for the appellant, are not entitled to consideration, as we shall later attempt to demonstrate. But if we were to assume that such cross examination, objections and statements did occur during the trial, as appellant contends, his present argument would not be thereby strengthened, for the simple reason that they relate to factual issues made by the evidence for the State and were not of such nature as to require direction of a verdict for the defendant.

The evidence for the State was circumstantial. It was competent and substantial, and the trial judge properly submitted it to the jury with correct instructions as to the requirements of the rules governing circumstantial

evidence in criminal cases. Whether it fulfilled those require-
ments is a matter going to its weight, and presents no issue
of law for determination here. *State v. Roddy,* 126 S. C.
499, 120 S. E. 359; *State v. Atkins,* 244 S. C. 213, 136
S. E. (2d) 298.

Appellant's contention that certain proceedings, testi-
mony, objections and statements occurring during
his trial, which are purported to be set forth *verbatim*
in an eleven-page document enclosed in his letter of Novem-
ber 18, 1965, addressed to his counsel Mr. Jenkins, were
not included in the transcript furnished him for the purposes
of his appeal, is directly contradicted by the testimony of the
court reporter who took the proceedings at the trial and
prepared the transcript from her official notes. In case of such
conflict between a litigant's recollection and the official
court record, the latter must prevail. *State v. Hollman,* 232
S. C. 489, 102 S. E. (2d) 873; *State v. Mayfield,* 235 S. C.
11, 109 S. E. (2d) 716, cert den. 363 U. S. 846, 80 S. Ct.
1616, 4 L. Ed. (2d) 1728, reh. den. 364 U. S. 857, 81 S.
Ct. 36, 5 L. Ed. (2d) 81; *State v. Tucker,* S. C., 149 S. E.
(2d) 769 (Opinion filed August 26, 1966). Like considera-
tions impel us to accept the court reporter's transcript
rather than appellant's uncorroborated *"verbatim"* recollec-
tions reduced to writing more than three years after his
trial.

We find nothing in the record before us to support
appellant's contention that he was incompetently
represented by counsel at his trial. On the contrary,
the record here convinces us that appellant's counsel Mr.
Harley Wooten, an experienced trial lawyer retained by
appellant's family on his behalf, ably and conscientiously
represented him throughout the trial. Mr. Wooten's cross
examination of the witnesses for the prosecution was vig-
orous and thorough; and the fact that at the conclusion of
the State's case he did not move for a directed verdict of
acquittal affords no basis for the charge of incompetence.
Rather it would seem to indicate counsel's awareness of

the fact that in the face of the evidence (to which we have heretofore referred at some length) there was no likelihood that such motion would have been granted, and that its refusal might have adversely affected his client's case in the minds of the jury. Nor can professional incompetence be fairly inferred from counsel's agreement with the State to a consolidated trial under the two indictments. The two offenses were of the same general nature, involving connected transactions closely related in time, place and character; and the trial judge had power, in his discretion, to order them tried together over objection by the defendant in the absence of a showing that the latter's substantive rights would have been thereby prejudiced. *State v. Evans*, 112 S. C. 43, 99 S. E. 751; 53 Am. Jur., Trial, Section 67; Anno.: 59 A. L. R. (2d) 841, 847, 855. Cf. *City of Greenville v. Chapman*, 210 S. C. 157, 41 S. E. (2d) 865, affirming the trial court's denial of the defendant's motion to require the city to elect on which of several charges set out in the warrant it would proceed to trial. There is nothing in this record to warrant the conclusion that counsel's agreement to a consolidated trial was made otherwise than in good faith and with due regard to appellant's rights; there is no basis in this record for the inference that prejudice to appellant's rights resulted from such decision.

Nor does the fact that counsel, after consultation with the defendant, decided that his chances of acquittal would be better if the defense should offer no testimony, support the charge of incompetent representation. It is a matter of common knowledge among members of the legal profession that in the trial of cases, especially on the criminal side of the court, it not infrequently happens that counsel must face as a calculated risk the decision whether or not the defendant, or witnesses on his behalf, should take the stand. Many factors must be considered: in the instant case, with regard to the defendant, whom his counsel had known for at least a year, the probable impression that he would make upon the jury, and the probability that an attempted alibi would

break down; with regard to witnesses suggested by the defendant, the necessarily negative character of their testimony; with regard to the State's case, the fact that it rested wholly on circumstantial evidence and the possibility that it might be overcome more readily by argument to the jury than by negative testimony for the defense. Appellant's counsel considered the risk and decided that the odds favored his doing what he did; he so advised appellant, who agreed to the course recommended. If such a decision should be held sufficient to convict an experienced and conscientious attorney of incompetence in the representation of his client, that conclusion would in reality be based upon the *post hoc propter hoc* reasoning that the defendant's conviction resulted from his failure to offer tsetimony, and that had he offered testimony he would have been acquitted. It would logically follow from such illogical reasoning that if the defendant had been convicted after offering testimony his counsel would have been guilty of professional incompetence in permitting such testimony to be offered.

The right of an accused person to competent representation does not entitle him to perfection on the part of his counsel, or to a favorable outcome of his trial. All that his constitutional rights require in that regard is that his counsel in good faith and to the best of his ability, render service that is directed toward furtherance of a fair trial. *Tillman v. State,* 244 S. C. 259, 136 S. E. (2d) 300; *Welch v. MacDougall,* 246 S. C. 258, 143 S. E. (2d) 455; *Myers v. State,* S. C., 151 S. E. (2d) 655 (Opinion filed December 5, 1966). The record here convinces us that the service rendered by appellant's counsel upon his trial fully met that standard, and that appellant's accusations to the contrary are unfounded.

In our discussion of appellant's contention that he was incompetently represented by counsel at his trial we have touched upon the consolidation of the trial under two indictments, although that matter has been urged as error on the part of the trial judge in violation of appel-

lant's constitutional rights and without waiver of such rights, rather than as ground for a holding of incompetent representation. Discussing it now apart from the charge of incompetent representation, we conclude that it is without merit, for the following reasons:

1. There is no showing of prejudice to any substantial right of the defendant resulting from consolidation of the charges under both indictments for trial together.

2. The defendant had no inalienable right to require that he be tried separately under each indictment, the matter of consolidation or severance being entrusted to the discretion of the trial judge. The defendant had the right, of course, to object to the consolidation; but that right could be waived and was waived by his counsel's agreement with the State that the charges under both indictments should be tried together.

3. The present contention, not having been presented before the trial court, is unavailable on appeal. *State v. Campbell,* 230 S. C. 432, 96 S. E. (2d) 476, cert. den. 77 S. Ct. 1295, 354 U. S. 914, 1 L. Ed. (2d) 1427; *State v. Hollman, supra; State v. Mayfield, supra.*

We find no merit in appellant's exceptions on appeal from his convictions and sentence, and none in those on appeal from the order of the circuit court denying his application for a writ of *habeas corpus.*

Affirmed.

Moss, C. J., and Lewis, Bussey and Brailsford, JJ., concur.