**UNITED STATES of America ex rel.
Earl Thomas SADLER**

v.

**COMMONWEALTH OF PENN-
SYLVANIA.**

**Misc. No. 69-24.**

United States District Court
E. D. Pennsylvania.

Nov. 3, 1969.

Donald E. Matusow, Philadelphia, Pa.,
court-appointed, for relator.

Arlen Specter, Dist. Atty., Joseph J.
Musto, Asst. Dist. Atty., Philadelphia,
Pa., for defendant.

OPINION

JOSEPH S. LORD, III, District
Judge.

Relator was indicted on Bills of In-
dictment Nos. 123 (charging felonious
use and possession of drugs), 124 (charg-
ing burglary with intent to commit a
felony), and 125 (charging possession of
burglary tools), February Sessions, 1961.
On March 2, 1961, relator was brought
to trial before the Honorable Edwin W.
Clark. Relator's counsel was a member
of the staff of the Public Defender
Association of Philadelphia. Relator
pleaded guilty to the charges of use of
narcotics, burglary and possession of
burglary tools, but pleaded not guilty

to the charge of possession of drugs. Relator waived a jury trial on that charge. At the conclusion of the Commonwealth's case on the possession charge, Judge Clark sustained defense counsel's demurrer, whereupon the Assistant District Attorney stated that, in his view, the evidence did not support the charge of burglary. Judge Clark agreed and adjudicated relator guilty of *attempted* burglary, as well as use of drugs and possession of burglary tools. Notes of Testimony, Philadelphia Court of Quarter Sessions, February Term, March 2, 1961, p. 5 [hereinafter cited as "Trial N.T."]. Relator was thereupon sentenced to serve from 3 to 7 years on Bill No. 124 (attempted burglary), and 2 to 5 years on Bill No. 123 (use of drugs), the sentences to run concurrently. Sentence was suspended on Bill No. 125 (possession of burglary tools). Trial N.T. 6, 7.

Relator has collaterally attacked his convictions by filing two petitions under the Pennsylvania Post Conviction Hearing Act, 19 Pa.Stat.Ann. § 1180–1 et seq., ("PCHA"). His first petition was denied, after a hearing, on July 11, 1967. No appeal was taken. Relator's second PCHA petition was denied without a hearing and affirmed per curiam by the Pennsylvania Superior Court. Commonwealth v. Sadler, 213 Pa.Super. 727, 244 A.2d 159 (1968). The Pennsylvania Supreme Court denied allocatur.

In this petition for the writ of habeas corpus relator contends that (1) his guilty pleas were not knowingly and intelligently entered; (2) he was deprived of the effective assistance of counsel; and (3) statements he made to the police were involuntarily given. We ordered a hearing and appointed counsel.

■ At the outset we observe that relator abandoned any attack on his guilty plea to the charge of use of narcotic drugs. At the PCHA hearing, relator's appointed counsel stated to the court that

" * * * [e]ven today, Your Honor, we do not attack the voluntariness of

the plea as to narcotics. The only attack is to the burglary and the burglary tools. It is as to the sufficiency of advice the man got." State N.T. 3.

At the same hearing, relator testified to the same effect when questioned by his counsel:

"Q. In fact, when you were arrested you were under the influence of narcotics?

"A. Yes, I was.

"Q. So, you are not challenging that guilty plea?

"A. No, I am not challenging the guilty plea as far as drugs." *Id.* at 14.

It is probable, as the Commonwealth suggests, that relator participated in this decision to concede the validity of his plea to use of narcotics in order to give added credence to his contention that he was under the influence of narcotics when he was arrested. This express waiver of an attack on that guilty plea constitutes a "deliberate by-passing of state procedures * * *", Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963), sufficient to bar him from seeking relief on that charge in this petition for federal habeas corpus. Henry v. Mississippi, 379 U.S. 443, 451–452, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *cf.* Smith v. Yeager, 393 U.S. 122, 89 S.Ct. 277, 21 L.Ed.2d 246 (1968). We therefore consider only his plea of guilty to the charges of burglary and possession of burglary tools.

■ On the morning of January 23, 1961, the police responded to a report from a woman that someone was attempting to break into her apartment. Relator was apprehended by the police inside the apartment building and arrested. Notes of Testimony, Hearing on Petition for Writ of Habeas Corpus, United States District Court for the Eastern District of Pennsylvania, p. 18 [hereinafter cited as "Fed. N.T."]. Approximately two hours after his arrest, relator was interrogated. During his questioning relator admitted that he intended to burglarize the apartments to

obtain money for narcotics. Relator contends that this admission was given involuntarily.

In support of this contention, relator testified to the following facts: he had been an addict for approximately one year, and at the time of his arrest was consuming approximately twelve "bags" of heroin a day; he was unable to obtain any drugs for a twenty-hour period before his arrest and was suffering from the effects of drug withdrawal during his interrogation, and that the arresting officers were fully aware of his physical condition, to wit, he was highly nervous, sweating and nauseous.

There is a measure of truth in these assertions, complemented in part as they are by the Commonwealth's evidence, but the Commonwealth has established other, additional facts more credibly, some without refutation.[1] It is clear that relator's interrogation was brief: he admitted the purpose of his entry within a half hour after Detective McNichol began questioning him. Fed. N.T. 21, 23. Further, his interrogation was not "constant" during that time, id. at 22; Detective McNichol testified that relator appeared "nervous" while being questioned. Id. at 22–23. Officer Smith of the Narcotics Squad, in whose custody relator was placed after his questioning by Detective McNichol, testified that puncture marks present on relator's arms had begun to heal, or scab over, and this fact indicated that the needle marks were probably "a day or two days" old. Id. at 34. While relator was being held by the Narcotics Squad, a time which has not been determined exactly, Officer Smith observed relator to be "highly nervous". Id. at 35. Officer Smith further testified that after twenty-four hours without heroin, most addicts would begin to evince preliminary withdrawal symptoms, and that relator's sweatiness and nervous state conformed to that pattern—"They were not severe symptoms of withdrawal but perceptible * * *."

Id. at 31. The "preliminary" nature of relator's withdrawal is further corroborated by testimony of Officer Smith and Detective McNichol, which we believe, that at no time during relator's interrogation by either man was relator nauseous, id. at 23, 31, and by relator's own testimony at his PCHA hearing that he was "starting to withdraw" when he admitted his criminal intent to Detective McNichol. State N.T. p. 11. We conclude that relator was not undergoing severe withdrawal at the time of his interrogation.

We have also decided that relator's repeated testimony that he was "real sick", e. g., Fed. N.T. 42, 44, 47–48, 69, 70, and that he admitted his criminal designs only after "constant interrogation", e. g., id. at 45, 71, simply are not worthy of belief. We think it significant that relator has never contended that he requested a doctor and was denied access to one. Compare United States ex rel. Collins v. Maroney, 287 F.Supp. 420, 422–424 (E.D.Pa., 1968). Relator had only a conveniently vague memory of his condition at the time of his questioning and could not remember exactly what he told Detective McNichol or Officer Smith, e. g., Fed. N.T. 45–46, yet he was able to remember the details of the Narcotic Squad's search of his home and was certain that he did not give his consent to it, id. at 47, an event which occurred several hours after his arrest when his withdrawal symptoms would have become more severe. See id. at 33 (testimony of Officer Smith ; see United States ex rel. Collins v. Maroney, 297 F.Supp. 420, 423 (E.D.Pa., 1968). Rather, the fact that relator confessed his intent after only half an hour's questioning, see Bell v. Patterson, 279 F. Supp. 760, 764 (D.Colo., 1968), indicates that relator, more or less "caught in the act," readily admitted the purpose behind his presence in the apartment building. We are of the opinion that relator has not carried his burden and that it is

---

1. Relator's trial counsel, who could remember no details of his representation of relator, answered two sets of interrogatories in a general fashion.

more probable than not that relator's statement to McNichol was voluntary. Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). At the same time, it is not clear on this record what effect relator's preliminary withdrawal had upon his will. While this may be characterized as a failure of proof, we prefer not to rely upon the voluntariness of relator's confession, but rather the fact that it is clear on this record that, at all events, relator's pleas of guilty were voluntarily and understandingly entered.

■ We begin with the assumption that the trial court's failure to determine on the record whether relator understood the nature and the consequences of his guilty plea shifts to the Commonwealth the burden of proving the pleas' validity.[2] United States ex rel. McCloud v. Rundle, 402 F.2d 853 (C.A. 3, 1968). It is clear that this burden has been carried.

Relator's primary motivation for pleading guilty was the hope of a lenient sentence. Fed. N.T. 78–82. Relator's expressed concern for his previous statement to Detective McNichol, even if believed, and we do not believe it, was a secondary consideration which relator remembered to mention only once in his testimony before us. See id. at 72. The expected leniency was a five year sentence according to relator's testimony at his PCHA hearing, but when before us, the expected leniency had increased to a "county sentence" of less than two years. Fed. N.T. 76. More importantly, relator *was* aware of the nature of the charges against him. Id. at 65. He knew he could receive the maximum sentence of up to twenty years for burglary, id. at 75 and 76, and five years for

use of narcotics. Id. at 81. Relator was also aware that his plea of guilty admitted the commission of the crimes charged. Id. at 82. Finally, at the trial in 1961, relator repeated his admission of criminal purpose during direct examination by his attorney:

"Q. Do you have anything you want to say to the Court? It happened just the way the officers said?

"A. Yes.

"Q. Why did you do it?

"A. Well, I was sick. * * *

"Q. Why were you trying to commit the burglary here?

"A. So I could get some more narcotics.

BY THE COURT:

"Q. Get money to buy narcotics?

"A. Yes." Trial N.T. 6.

That counsel was attempting to obtain the court's sympathy for purposes of sentencing by portraying relator as a man possessed by drugs is apparent to us. This strategy worked in large part. Relator has argued, however, that his in-court admission was forced by his earlier confession to Detective McNichol. See State N.T. 30–31. But when pressed on cross-examination before us, the only operative motive he offered, and the only one we believe, was that because of his record, State N.T. 27–29, and the fact that nothing was actually stolen, he expected a short sentence on the charge of burglary if he pleaded guilty. And a seven-year maximum sentence out of a possible twenty years, when he himself expected five years at one point, is not exactly a severe sentence. We conclude that relator's pleas are valid.

■■ Bound up with relator's contention that his guilty plea was invalid

2. Relator does not rely on Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), conceding that it has not yet been held to have retroactive application. The decisions in the Eastern District of Pennsylvania hold *Boykin* to apply prospectively only. United States ex rel. Haith v. Rundle, Misc. No. 269–117 (E.D.Pa., filed Sept. 24, 1969); United States ex rel. Fink v. Rundle, Misc. No. 3669 (E.D.Pa., filed August 18, 1969); United States ex rel. Wiggins v. Commonwealth of Pennsylvania, 302 F.Supp. 845 (E.D.Pa. 1969); Commonwealth v. Godfrey, 434 Pa. 532, 254 A.2d 923 (1969) (Jones, J.).

is his attack upon the adequacy of counsel. Relator was first interviewed by a member of the Voluntary Defender's Office of Philadelphia about one month after his arrest; the interview lasted about twenty minutes. Fed. N.T. 49. Relator was interviewed by his appointed trial counsel approximately 10-15 minutes before trial. *Id.* at 52. Relator maintains that this late appointment of trial counsel sets out a prima facie case of denial of the effective assistance of counsel, citing United States ex rel. Mathis v. Rundle, 394 F.2d 748 (C.A.3, 1968). We agree. However, this prima facie case of inherent prejudice

> " * * * may properly be overcome *either* by evidence produced by the state in an evidentiary hearing showing that there was no prejudice *or* by adequate affirmative proof *otherwise* appearing in the record demonstrating that the appellant was not prejudiced. * * * " United States ex rel. Chambers v. Maroney, 408 F.2d 1186, 1190 (C.A.3, 1969). (Emphasis in original.)

We think that, in addition to the preceding discussion of the validity of relator's pleas of guilty, several other considerations demonstrate that the Commonwealth has carried the burden of showing lack of prejudice.

Relator deprecates the case presented against him at his "trial" but fails to notice that the only point in issue was the charge of possession of narcotics. The charges of burglary and possession of burglary tools required no proof because relator had pleaded guilty to them, a decision which hardly appears to us to have been unwise. The Commonwealth's case against relator can be roughly recon-structed at this point, and it included the presence of burglary tools on his person, which he could not explain, *e. g.,* Fed. N.T. 26, and the fact that he was apprehended inside the apartment building, a building inside which some of the stripping around apartment doors on the second and third floors had been pried off, Trial N.T. 3. The puncture marks on relator's arms added a motive to this web of circumstances. Relator stoutly maintains that he committed no burglary, and that the Assistant District Attorney noticed this apparent defect when he suggested that only an attempt had been committed. It is probable that relator misreads charity and additional leniency for injustice. It is not entirely clear that no crime of burglary could have been proven on that evidence. See 18 Pa.Stat.Ann. § 4901 (Supp.1969); Commonwealth ex rel. Moszczynski v. Ashe, 343 Pa. 102, 21 A.2d 920 (1941); Commonwealth v. Le Grand, 336 Pa. 511, 9 A.2d 896 (1940); Commonwealth v. Procopio, 200 Pa.Super. 226, 188 A.2d 773 (1963).

We think that relator's counsel adopted a sensible course of action in trying to convince the trial judge that relator's crime was a function of his drug addiction, and that a strictly punitive treatment of his problem was inappropriate.[3] The trial transcript shows relator's concurrence in and cooperation with the strategy, and we disbelieve relator's testimony that his counsel failed to discuss his case with him in any way. Fed.N.T. 52-53. Relator's cooperation on the witness stand at his trial, and the understanding of his guilty plea evidenced at our hearing support a proposition contrary to that which he urges, namely, that his appointed counsel did provide ef-

---

3. Relator's contention that his counsel failed to investigate the circumstances of the search of his home by the Narcotics Squad is inapposite. Appointed counsel's notes on relator's case, see Interrogatories filed in State Record, Docket Entry of May 5, 1967, Answer No. 9 and Attached Sheet, clearly evidence counsel's determination that the charge of possession of drugs was not any good. Judge Clark's agreement with counsel's argument and his sustaining of counsel's demurrer to that charge demonstrates the validity of that position. See Trial N.T. 4-5. Thus, there was no need for counsel to concern himself with a search that produced no damaging evidence for the possession of drugs charge, the only charge for which the search had any relevance.

fective assistance for him and succeeded in obtaining a relatively favorable sentence for him by the adoption of the strategy we have outlined. Accordingly, we find that relator's Sixth and Fourteenth Amendment rights were not violated. The writ will be denied.

The court is indebted to Donald E. Matusow, Esquire, for his diligent and uncompensated representation of the relator.

It is so ordered.