Arthur MILLER and John N. Johnson, Petitioners,

v.

STATE OF SOUTH CAROLINA et al.. Respondents.

Civ. A. No. 70–2.

United States District Court, D. South Carolina, Columbia Division.

Feb. 17, 1970.

---

Daniel R. McLeod, Atty. Gen., Emmett H. Clair, Asst. Atty. Gen., Columbia, S. C., for respondents.

## OPINION and ORDER

DONALD RUSSELL, District Judge.

The petitioners in this *habeas corpus* proceeding are State prisoners, serving sentences imposed following pleas of guilty to indictments charging them with the statutory crimes of "Safecrack-ing"[1] and "possessing tools, etc., to be employed in crime"[2]. They were apprehended in the very act of attempting to break into a safe located in the Municipal Offices of the City of Rock Hill, South Carolina. At the time of their apprehension, they had not succeeded in opening the safe but had attempted to "pry" it open at "several positions of the safe". Their confederate, who was in the "getaway" car at the side of the Municipal Building, escaped and has not been apprehended. After their arrest, the petitioners were given a preliminary hearing, at which the two arresting officers testified. The petitioners were present but were unrepresented by counsel. At the preliminary, they requested the appointment of counsel. A few days later separate counsel for the two were appointed. In some way, confusion arose over which defendant the separate counsel was supposed to represent. It seems that counsel appointed to represent the petitioner Johnson though he was to represent the petitioner Miller and *vice versa*. The error was unimportant and not prejudicial to either petitioner, however. Counsel, in interviewing their supposed client, saw at the same time and as a part of the interview the other defendant, their real client. Moreover, there was no conflict of interest between the petitioners: their involvement was the same and such defenses as they had were identical. And the confusion was cleared up before the entry of their pleas by the petitioners. At their arraignment, the

---

1. "§ 16–337. *Safecracking.*—Any person convicted of using explosives, tools or any other implement in or about a safe used for keeping money or other valuables with intent to commit larceny or any other crime shall be guilty of a felony and be sentenced to the Penitentiary during the term of his life; *provided*, that if the jury recommend the defendant to the mercy of the court, a sentence of not less than ten years' imprisonment may be imposed, in the discretion of the court." Code of Laws of South Carolina, 1962.

2. "§ 16–302. *Making, mending or possessing tools, etc., to be employed in crime.*—A person who makes or mends, causes to be made or mended or has in his possession in the day or nighttime any engine, machine, tool, false key, picklock, bit, nippers, nitroglycerine, dynamite cap, coil or fuse, steel wedge, drill, tap-pin or other implement or thing adapted, designed or commonly used for the commission of burglary, larceny, safecracking or other crime, under circumstances evincing any intent to use or employ or allow the same to be used or employed in the commission of a crime or knowing that the same are intended to be so used shall, upon conviction, be guilty of a misdemeanor. In either case he shall, upon conviction, be punished at the discretion of the Court." Code of Laws of South Carolina, 1962.

petitioners plead guilty. Both were given the minimum sentence of ten years under the "Safecracking" statute. Their sentence under the charge of "possessing tools to be employed in crime" was to run concurrently with their sentence under the "Safecracking" charge and was for one year.

A few months after beginning the service of their sentences, the petitioners filed in the State Court their joint petition in *habeas corpus*, seeking release from custody on the grounds that (1) they were not furnished counsel at their preliminary hearing, (2) ineffective representation of counsel, and (3) involuntariness of their pleas of guilty. The State Court appointed counsel for the petitioners in such proceeding and gave the petitioners a full and fair evidentiary hearing. At such hearing, the record of the proceedings at which the petitioners entered their pleas was introduced. It showed a rather painstaking examination of the petitioners by the Trial Judge to establish the voluntariness of petitioner' pleas. Under the Court's patient examination, both disclaimed any mistreatment to induce their pleas and professed in unequivocal terms the free and voluntary nature of their pleas. They professed complete satisfaction with the representation afforded them by their appointed counsel and stated that, in their opinion, their counsel had done everything they could for them and everything they wanted such counsel to do. After impressing on them the seriousness of the crime to which they were pleading guilty, the Court inquired directly of the petitioners whether they were guilty. Both admitted their guilt without equivocation and expressed the wish to enter a guilty plea. On that basis, the record shows the Trial Court accepted their pleas.

Both petitioners testified at the hearing in the State Court on their petition in *habeas corpus*. In general, there was no difference in their testimony. Both seemed to take the position that they were not guilty of "Safecracking", only of "Safetampering". They based their primary complaint on the absence of counsel at their preliminary hearing and on what they asserted was the ineffective representation given them by their appointed counsel. When pressed to specify in what particular their counsel had failed adequately to represent them, one indicated that his counsel had failed to secure a continuance and the other that his counsel had not obtained his release on bond. They, also, complained that they had been seen by their counsel only once and then shortly before the entry of their pleas. One of the petitioners stated in his examination that the remedy he sought was not a new trial but "I want my sentence reduced or released." [3]

They, also, referred to the fact that their appointed counsel pointed out to them that, if they plead guilty, the Solicitor would recommend mercy and, if the Court accepted such recommendation, their sentence would be for ten years, whereas, if they plead not guilty and were tried and convicted, they could receive as much as a life sentence. They contended the Solicitor had personally promised them sentences of ten years if they plead guilty.[4]

The attorneys appointed to represent the petitioners, as well as the Solicitor, testified at the State *habeas corpus* hearing. All agreed that the Solicitor had not personally made any promises to the petitioners. The counsel testified to their interviews and discussions with the petitioners. Apparently, both counsel had seen their clients shortly after their appointment and again before the arraignment. It is true that the separate counsel, in their early interviews, each thought he was representing the defendant who later turned out not to be his client but this seems to have been unimportant, since counsel did talk to his real client at the time in the presence of his then supposed client and co-defendant

---

3. Cf. Gilstrap v. State (1969) 252 S.C. 625, 168 S.E.2d 88.

4. This, incidentally, was the sentence received by the petitioners.

and both petitioners had the same defenses and stood in the same position. Both counsel conceded that they, as it was their duty, had told the petitioners the range of sentences available under the charges set forth in the indictments returned against them but denied any pressure on the petitioners to plead. In fact, according to the counsel, there seemed never to have been any doubt about the guilt of the petitioners, except on the point whether "Safetampering" constituted "Safecracking" under Section 16–337. On this record, the State Court concluded that there was no merit in the petition and dismissed. The petitioners gave notice of appeal from the order of dismissal but have taken no steps to process, though the respondents express a willingness to secure the appointment of counsel to process, such appeal.

The petitioners, without availing themselves of their right of appeal to the State Supreme Court from the Circuit Court's denial of their petition, thereupon filed their petition in this Court. The grounds are generally the same as those pressed upon the State Court. They again claim prejudice in the failure to provide them with counsel at the preliminary hearing, deny that their pleas of guilty were voluntary, because they were not afforded any protection against self-incrimination prior to their guilty pleas in Court, and assert ineffective representation of counsel.

■ At the outset, it should be noted that the petitioners have not exhausted their State remedies in *habeas corpus* through an exercise of their right of appeal from the Circuit Court decision. 28 U.S.C., sec. 2254; Barry v. Sigler (8th Cir. 1967) 373 F.2d 835, 837–838; United States ex rel. Brock v. LaValle (D.C.N.Y.1969) 306 F.Supp. 159, 161, note 4. But, while this Court is expressly precluded by Section 2254 from granting affirmative relief in these proceedings in the absence of such exhaustion, it may, without requiring such exhaustion, dismiss a petition in *habeas corpus* where the claim is clearly without

merit. United States ex rel. Drew v. Myers (3rd Cir. 1964) 327 F.2d 174, 183, cert. den. 379 U.S. 847, 85 S.Ct. 88, 13 L.Ed.2d 52; United States ex rel. Pendergrass v. Anderson (D.C.Del.1969) 304 F.Supp. 577, 578. And, in determining whether the claim is without merit, the Court may look to the State Court record, where the petitioners were given a full and fair evidentiary hearing under the standards enunciated in Townsend v. Sain (1963) 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, and need not afford petitioners another evidentiary hearing. See, also, Section 2254, 28 U.S.C.

■ The petitioners' claim of denial of counsel at the preliminary hearing is of no moment. In the first place, a preliminary hearing does not represent a critical stage in criminal proceedings in South Carolina nor could the petitioners be prejudiced by anything that took place at such preliminary hearing. Allen v. MacDougall (D.C.S.C.1967) 267 F. Supp. 837, 841; State v. White (1963) 243 S.C. 238, 242, 133 S.E.2d 320, rev. on other grounds 246 S.C. 502, 144 S.E.2d 481; cf., Hall v. United States (3d Cir., 1969) 418 F.2d 498, 499. For recent cases finding that, under local procedure, a preliminary hearing does not represent a "critical stage" in the proceedings, see, United States ex rel. Budd v. Maroney (3d Cir. 1968) 398 F.2d 806, 807 (construing Pa. law); Rambo v. Peyton (4th Cir. 1967) 380 F.2d 363 (construing Va. law). The test of "critical stage" in this connection is "whether the proceeding either requires or offers the opportunity to take a procedural step which will have prejudicial effects in later proceedings (Pagan Cancel v. Delgado, 1st Cir. 1969, 408 F.2d 1018, 1019), or whether "events transpire (at the preliminary) that are likely to prejudice his ensuing trial" (DeToro v. Pepersack, 4th Cir. 1964, 332 F.2d 341, 343–344, cert. den. 379 U.S. 909, 85 S.Ct. 198, 13 L.Ed.2d 181). For illustrations of situations where such preliminary may constitute a "critical stage" of the proceedings, see, Arsenault v. Massachusetts (1968) 393 U.S. 5, 6, 89 S.Ct. 35, 21 L.Ed.2d 5; Pointer v. Texas

(1965) 380 U.S. 400, 402–403, 85 S.Ct. 1065, 13 L.Ed.2d 923.

■ Moreover, the petitioners' subsequent guilty plea represented an effective waiver of any possible defect in the preliminary hearing, Moore v. Wainwright (5th Cir. 1968) 401 F.2d 525, 526.

■ The record shows, also, that there is no basis for a finding of ineffective representation by their counsel. In their examination, the petitioners' only specific complaint against their counsel was that such counsel might, had they been more diligent, have secured their release on bond or obtained a continuance of their case. They did not testify that they ever requested of their counsel that they seek such relief. Actually, both were without funds and it is not indicated by them how they expected to secure bond, if it had been granted. And the only reason advanced by them for a continuance was that one of the petitioners wished to employ private counsel.[5] Such reason apparently was never conveyed to appointed counsel, who would undoubtedly have been relieved to have been released from representation; nor did the petitioner explain how he expected to pay such counsel. There is perhaps an implication in the record that the appointed counsel failed adequately to protect the petitioners' rights in not raising the plea that, since the petitioners had not actually succeeded in opening the safe involved in their prosecution, they could not be guilty of "Safecracking", only of, to use the words of one of the petitioners, "Safetampering". However, it has been authoritatively held, in the construction of the South Carolina "Safecracking" statute, "It is not essential to constitute a safe cracker that he shall be successful in his attempt to break open the safe". State v. O'Day (1906) 74 S.C. 448, 450, 54 S.E. 607, 608: see, also, Shelnut v. State (1965) 247 S.C. 41, 45, 145 S.E.2d 420; cf., United States ex rel. Sadler v. Pennsylvania (D.C.Pa.1969)

306 F.Supp. 102, 106. It is thus clear that "Safetampering" falls within the crime defined as "Safecracking" in Section 16–337 of the South Carolina Code.

■ Nor is it, under the particular facts of this case, of any moment that appointed counsel saw petitioners on only two occasions. It is true, as our Circuit Court has often announced, that the absence of adequate consultation with, or belated appointment of counsel, may create a *prima facie* case of denial of effective representation, thereby shifting the burden of establishing absence of prejudice therefrom to the prosecution. Fields v. Peyton (4th Cir. 1967) 375 F.2d 624, 628; Twiford v. Peyton (4th Cir. 1967) 372 F.2d 670, 673; Martin v. Commonwealth of Virginia (4th Cir. 1966) 365 F.2d 549, 551–552; Sanders v. State of South Carolina (D.C.S.C.1969) 296 F. Supp. 563, 570. But, even without an evidentiary hearing, this *prima facie* showing may be overcome where the record contains "adequate affirmative evidence to overcome the presumption of harm from the lack of time for preparation" by appointed counsel. Fields v. Peyton, *supra*, 375 F.2d p. 628; Turner v. State of Maryland (4th Cir. 1963) 318 F.2d 852, 854; United States ex rel. Chambers v. Maroney (3d Cir. 1969) 408 F.2d 1186, 1187, 1190. The State Court record is sufficient to establish that there was, under the facts of this case, adequate consultation with petitioners by their appointed counsel. The petitioners conceded their guilt. They were apprehended in the actual commission of the crime, with which they were charged. There was no basis for any plea other than one of guilty. No amount of additional consultation with the petitioners and no amount of diligence on the part of counsel could have unearthed a shred of evidence to rebut the clear proof of petitioners' plain guilt or to have provided them with any plea other than that which was entered.[6] As the petitioners

5. Cf., United States v. Valdez (5th Cir. 1969) 418 F.2d 363, 365.

6. See, United States ex rel. Sadler v. Pennsylvania, *supra*, 306 F.Supp. at p. 106.

concede now: They were caught in the very act itself, after they had broken into the municipal offices. Counsel accomplished on their behalf everything that the most diligent and resourceful counsel could have secured for them, i. e., the minimum sentence for their crime. Such counsel deserve the gratitude, not the criticism, of the petitioners.

For the reasons given, it is plain that the petitioners are not entitled to relief herein and their petition is accordingly dismissed.

And it is so ordered.