573 S.E.2d 856

**The STATE, Respondent,**

v.

**John H. SIMMONS, Appellant.**

**No. 3572.**

Court of Appeals of South Carolina.

Heard Nov. 7, 2002.

Decided Nov. 25, 2002.

344

346

Senior Assistant Appellate Defender Wanda H. Haile, of Columbia, for Appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Warren B. Giese, of Columbia, for Respondent.

ANDERSON, J.:

John H. Simmons was convicted of first degree burglary and petit larceny. He was sentenced to life without the possibility of parole. We affirm.

### FACTS/PROCEDURAL BACKGROUND

On October 4, 1999, at approximately 2:15 a.m., Shirley Ann Thompson was in bed when she heard her door beep. Thompson had a burglar alarm system in her home on Liberty Street, but she did not have the alarm activated that evening. Even without the alarm activated, the system would beep whenever a door in Thompson's home was opened. Initially,

Thompson assumed it was her son, but she soon discovered the man she saw carrying a light in her hallway was not her son. Thompson watched the figure walk down the hallway and grab her purse from the doorknob of her bedroom door, pulling the bedroom door closed in the process. Thompson grabbed her gun, chased the man out of her house, and shot toward him as he was fleeing down Liberty Street in the direction of the car wash. Thompson then called the police to report the burglary (Thompson burglary). She described the man as a dark-skinned black male wearing a black shirt with white writing on the back.

On that same morning, Douglas Brooks was watching television at his home near the intersection of Liberty and Magrath Streets, which was a block and a half away from Thompson's home. Sometime after 2:00 a.m., Brooks heard a loud noise coming from his back door which sounded like someone was trying to kick the door in. Brooks investigated the noise and saw someone jump off of his back porch. Brooks chased the man until he ran across Colonial Drive. Brooks stopped pursuing the suspect, and turned around to see a patrol car responding to the call at Thompson's house. Brooks flagged the officer down, informed him of the incident at his home, and described the suspect as wearing dark clothing.

As Officer Robert Lee Gibson was driving to Thompson's house in response to her call to 911, he saw a man in dark clothing run across Colonial Drive as he approached Liberty Street. Gibson informed another officer that he saw the suspect running down Colonial Drive. Police circled the area to find the suspect. Minutes later, the police located Simmons, who was hiding in some nearby bushes. He was wearing a black t-shirt with white writing on it. In the bushes, police found some clothing and other items Brooks had stored in his outside shed. Simmons had abrasions on his head. An ambulance was called to examine Simmons' wounds.

Thompson was taken to the scene, where she identified Simmons as the figure she had seen in her home. Although Thompson's purse was not immediately located, it was discovered the next morning across the street from the car wash near a daycare center. Because Brooks only viewed the

suspect from the rear, he was unable to identify Simmons as the man who ran from his back porch.

Edward Anderson, a co-worker of Simmons, testified at trial. He stated that he and Simmons were working at the Cotton Club the evening of October 3, 1999. That night, Simmons was wearing the club's uniform, a black t-shirt with "Cotton Club" written on the back in white writing, along with black pants and suspenders. Anderson declared that he and Simmons left the club when it closed at midnight on October 4, 1999. The two men went to Dave's Lounge, where they drank several alcoholic beverages. On previous occasions, Anderson had driven Simmons home after work. Their route took them down Beltline Boulevard. After the two left Dave's around 2:00 a.m., an intoxicated Simmons directed Anderson to vary from their usual route by letting him out of the car near Beltline Boulevard and Colonial Drive, without explanation. Anderson let Simmons out of the car on Colonial Drive. Anderson then continued home.

Peter Banco, an officer with the Columbia police department, responded to Thompson's house on the morning of the burglary. He took a statement from Thompson at 4:05 a.m. He later returned to his office where he was able to speak with Simmons, who was already in custody. Banco gave Simmons his *Miranda* warnings. Simmons indicated he understood his rights. Simmons smelled of alcohol but he did not appear drunk to Banco. When Banco asked Simmons whether he could have attempted to break into Thompson's and Brooks' homes, Simmons replied that he did not "know what's going on." The interview ended.

Simmons testified in his own defense at trial. He stated that the evening of the incident, he was wearing his black Cotton Club shirt with black tuxedo pants. He started drinking alcoholic beverages at about 4:00 p.m. while he was preparing dinner at home. Simmons had a few more drinks at the Cotton Club. He and Anderson left the Cotton Club at midnight and went to Dave's Lounge, where he imbibed three or four alcoholic drinks. According to Simmons, when he and Anderson left Dave's Lounge sometime between 1:00 and 2:00 a.m., Simmons was not intoxicated. Simmons claimed he asked Anderson to stop the car because he began to feel

nauseous from all the alcohol he drank that day and he wanted to get out and walk. Simmons declared that he put on his earphones to his radio and began to walk along the edge of the road, when he thought he heard someone come up behind him. Simmons stated that, when he turned around to see a police patrol car behind him, he was struck by the patrol car. Simmons said he blacked out at that point, and his next memory was of waking up when medical personnel were working on him. Simmons denied breaking into Thompson's residence or attempting to break into Brooks' home. He further denied being in the bushes that morning. Simmons maintained the abrasion on his face that morning was the result of being hit by the patrol car.

## *ISSUES*

I. Did the Circuit Court err in denying Simmons' motion to sever?

II. Did the Circuit Court err in denying Simmons' motion for a mistrial after directed verdicts of acquittal were issued on the burglary and petit larceny charges from the Brooks burglary?

III. Did the Circuit Court err in allowing the use of Simmons' prior burglary and housebreaking convictions to prove an element of first degree burglary?

## *LAW/ANALYSIS*

### I. SEVERANCE/JOINDER

Simmons argues the trial judge erred in failing to sever the two burglary charges against him for trial. We disagree.

Prior to trial, Simmons moved to sever the charges against him. Simmons contended the victims in the Thompson and Brooks burglaries were different, the witnesses were different, and the acts alleged were different. Simmons asserted he would be prejudiced if the jury heard about both the Thompson and the Brooks burglaries because the evidence was stronger in the Thompson matter and would influence the jury on the Brooks matter. The trial judge noted that the matter was within his discretion, and the trial proceeded on both sets of charges.

 A motion for severance is addressed to the sound discretion of the trial court. *State v. Tucker,* 324 S.C. 155, 478 S.E.2d 260 (1996); *McCrary v. State,* 249 S.C. 14, 152 S.E.2d 235 (1967); *State v. Carter,* 324 S.C. 383, 478 S.E.2d 86 (Ct.App.1996); *State v. Anderson,* 318 S.C. 395, 458 S.E.2d 56 (Ct.App.1995). The court's ruling will not be disturbed on appeal absent an abuse of that discretion. *Tucker,* 324 S.C. at 164, 478 S.E.2d at 265; *State v. Prince,* 316 S.C. 57, 447 S.E.2d 177 (1993); *State v. Deal,* 319 S.C. 49, 459 S.E.2d 93 (Ct.App.1995); *see also State v. Harris,* 351 S.C. 643, 572 S.E.2d 267 (2002) (Shearouse Adv. Sh. No. 34 at 32) (stating a motion for severance is addressed to trial court and should not be disturbed unless abuse of discretion is shown).

 Where the offenses charged in separate indictments are of the same general nature involving connected transactions closely related in kind, place and character, the trial judge has the power, in his discretion, to order the indictments tried together if the defendant's substantive rights would not be prejudiced. *State v. Smith,* 322 S.C. 107, 470 S.E.2d 364 (1996); *State v. Williams,* 263 S.C. 290, 210 S.E.2d 298 (1974); *State v. Jones,* 325 S.C. 310, 479 S.E.2d 517 (Ct.App.1996); *see also State v. Sullivan,* 277 S.C. 35, 282 S.E.2d 838 (1981) (where offenses charged in separate indictments are of same general nature, involving connected transactions closely related in kind, place and character, trial judge has authority, in his discretion, to order indictments tried together over objection of defendant absent showing that defendant's substantive rights were violated); *McCrary v. State,* 249 S.C. 14, 36, 152 S.E.2d 235, 246 (1967) (stating "[t]he two offenses were of the same general nature, involving connected transactions closely related in time, place and character; and the trial judge had power, in his discretion, to order them tried together over objection by the defendant in the absence of a showing that the latter's substantive rights would have been thereby prejudiced."). Offenses are considered to be of the same general nature where they are interconnected. *Jones,* 325 S.C. at 315, 479 S.E.2d at 519.

Conversely, offenses which are of the same nature, but which do not arise out of a single chain of circumstances and are not provable by the same evidence may not properly be tried together. *See, e.g., State v. Middleton,* 288 S.C. 21, 339

S.E.2d 692 (1986) (holding although prison escapee committed two murders within a few miles of each other and attempted an armed robbery, the trial judge erred in consolidating the charges for one trial where the crimes did not arise out of a single chain of circumstances and they required different evidence); *State v. Tate*, 286 S.C. 462, 334 S.E.2d 289 (Ct.App. 1985) (finding that joint trial on identical but unrelated forgeries violated defendant's right to a fair trial). *Cf. State v. Woomer*, 276 S.C. 258, 277 S.E.2d 696 (1981) (proper to try together all crimes arising from a single uninterrupted crime spree).

 Further, joinder of offenses in one trial is "proper if the offenses (1) are of the same general nature or character and spring from the same series of transactions, (2) are committed by the same offender, and (3) require the same or similar proof." *State v. Carter*, 324 S.C. 383, 386, 478 S.E.2d 86, 88 (Ct.App.1996) (citing *City of Greenville v. Chapman*, 210 S.C. 157, 41 S.E.2d 865 (1947)); *see also State v. Harris*, 351 S.C. 643, 572 S.E.2d 267 (2002) (Shearouse Adv. Sh. No. 34 at 32) ("Charges can be joined in the same indictment and tried together where they (1) arise out of a single chain of circumstances, (2) are proved by the same evidence, (3) are of the same general nature, and (4) no real right of the defendant has been prejudiced.").

 In the instant case, the joinder of the separate burglary offenses was proper. The break-in at Thompson's house was very close in time and proximity to the attempted break-in at Brooks' home. Although Brooks could not identify the physical characteristics of the man who attempted to break into his home, both Brooks and Thompson similarly described the suspect as wearing dark clothing. Simmons was found after Brooks chased him and directed police to Simmons' location. Despite the fact that Simmons was granted a directed verdict in the Brooks matter, both the indictments in the Brooks matter and the Thompson matter arose out of a single chain of events, were of the same nature, and were proved by the same evidence and witnesses. We find the trial court did not abuse its discretion in refusing to sever the indictments.

## II. RES GESTAE

Furthermore, the evidence of the Brooks burglary was necessary for a full presentation of the case without fragmentation. In *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996), our Supreme Court explained:

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae' " or the "uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . .' [and is thus] part of the res gestae of the crime charged." And where evidence is admissible to provide this "full presentation" of the offense, "[t]here is no reason to fragmentize the event under inquiry" by suppressing parts of the "res gestae."

*Id.* at 122, 470 S.E.2d at 370–71 (quoting *United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980)).

■ Simmons' act of burglarizing Thompson's home was "inextricably intertwined" with his attempt to evade Brooks, and his subsequent capture by the police. *Adams*, 322 S.C. at 122, 470 S.E.2d at 371. The information regarding the Brooks burglary was relevant to show the complete, whole, unfragmented story regarding Simmons' crimes and capture.

## III. MISTRIAL/CURATIVE INSTRUCTION

Simmons maintains the trial court erred in denying his motion for a mistrial. He claims he was prejudiced by the presentation of evidence regarding the Brooks burglary, especially in light of the fact that the trial court granted his motion for a directed verdict on the Brooks matter. We disagree.

At the end of the State's case, Simmons moved for a directed verdict of acquittal on the charges concerning the Brooks burglary. Simmons argued there was no evidence Brooks' home was entered, and the indictment failed to allege

that the shed outside Brooks' home was a building appurtenant in order to qualify for burglary. The trial court granted the directed verdict as to the Brooks burglary and petit larceny charges, finding there was a lack of evidence to support the charges. Simmons then requested a mistrial, contending the jury had heard the evidence regarding the Brooks burglary, the evidence should not have been admitted under *State v. Lyle*[1] because there was not clear and convincing proof of the Brooks burglary, and it had tainted the jury. The trial court denied the motion for a mistrial, finding the Brooks burglary constituted a "continuous event" and the State was entitled to present the Brooks evidence in order to show how Simmons was apprehended.

Simmons requested "a curative instruction or some other instruction to the jury as far as what they can consider or not consider as far as the second burglary." The trial court instructed the jury as follows:

> I need to advise you at this time that the court has granted a motion for the defendant for a directed verdict and I have dismissed indictments 2000–GS–40–45786 and 787 which were the charges of burglary at [Brooks' address] and the petty larceny that accompanied that charge. So, I have granted a directed verdict in favor of the defendant on those charges. They are not to be considered by the jury for any purpose for the remainder of this trial. We'll continue with the trial at this time.

■■ The decision to grant or deny a mistrial is within the sound discretion of the trial judge. *State v. Cooper*, 334 S.C. 540, 514 S.E.2d 584 (1999); *State v. Crosby*, 348 S.C. 387, 559 S.E.2d 352 (Ct.App.2001), *cert. granted* (Aug. 7, 2002); *State v. Patterson*, 337 S.C. 215, 522 S.E.2d 845 (Ct.App.1999). The court's decision will not be overturned on appeal absent an abuse of discretion amounting to an error of law. *State v. Harris*, 340 S.C. 59, 530 S.E.2d 626 (2000); *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998); *State v. Arnold*, 266 S.C. 153, 157, 221 S.E.2d 867, 868 (1976) (the general rule of this State is that "the ordering of, or refusal of a motion for mistrial is within the discretion of the trial judge and such

---

1. 125 S.C. 406, 118 S.E. 803 (1923).

discretion will not be overturned in the absence of abuse thereof amounting to an error of law.").

"The power of a court to declare a mistrial ought to be used with the greatest caution under urgent circumstances, and for very plain and obvious causes" stated into the record by the trial judge. *State v. Kirby,* 269 S.C. 25, 28, 236 S.E.2d 33, 34 (1977); *see also State v. Beckham,* 334 S.C. 302, 513 S.E.2d 606 (1999) (granting of motion for mistrial is extreme measure which should be taken only where incident is so grievous that prejudicial effect can be removed in no other way); *Patterson,* 337 S.C. at 227, 522 S.E.2d at 851 (mistrial should only be granted in cases of manifest necessity and with the greatest caution for very plain and obvious reasons). A mistrial should only be granted when "absolutely necessary," and a defendant must show both error and resulting prejudice in order to be entitled to a mistrial. *Harris,* 340 S.C. at 63, 530 S.E.2d at 628; *see also State v. Council,* 335 S.C. 1, 515 S.E.2d 508 (1999) (mistrial should not be granted unless absolutely necessary; to receive mistrial, defendant must show error and resulting prejudice). "The less than lucid test is therefore declared to be whether the mistrial was dictated by manifest necessity or the ends of public justice." *State v. Prince,* 279 S.C. 30, 33, 301 S.E.2d 471, 472 (1983).

The trial judge did not abuse his discretion in denying Simmons' motion for a mistrial. The evidence presented regarding the Brooks burglary showed that Brooks heard a noise, chased a suspect, and directed police to the location where Simmons was apprehended. This evidence was relevant to Simmons' capture and would have been admissible at trial regardless of whether Simmons faced charges for the Brooks incident. Thus, Simmons suffered no error or resulting prejudice from the admission of this evidence.

Moreover, the trial judge instructed the jury to disregard the evidence regarding the Brooks burglary. Generally, a trial judge's curative instruction is deemed to cure any error. *See Kelsey,* 331 S.C. at 75, 502 S.E.2d at 76; *Patterson,* 337 S.C. at 226, 522 S.E.2d at 850; *State v. Jones,* 325 S.C. 310, 479 S.E.2d 517 (Ct.App.1996). The trial judge in the present action thoroughly instructed the jury that Simmons no longer faced burglary or petit larceny charges in

connection with the Brooks burglary and they were not to consider that evidence in any way. Concomitantly, we find any alleged error in failing to declare a mistrial was cured.

## IV. PRIOR BURGLARY/HOUSEBREAKING CONVICTIONS

Simmons argues the trial court erred in allowing the State to present evidence of his prior burglary/housebreaking convictions as an element to support first degree burglary. Because Simmons agreed to stipulate that the burglary occurred at night, he contends it was unnecessary for the State to additionally prove his prior convictions. We disagree.

Prior to trial, Simmons moved to exclude evidence of his prior burglary/housebreaking convictions because the charged burglaries in the case *sub judice* occurred at night. Therefore, the State could prove the "nighttime" element of first degree burglary instead of proving the "two or more prior convictions" element. Simmons asserted the prior housebreaking convictions were more than ten years old, thus outside the ten year time limit, and were prejudicial. The State informed the trial court that Simmons' prior record included a 1981 guilty plea to three counts of housebreaking; a 1983 conviction for common law burglary, on which he later received post-conviction relief; and a 1998 guilty plea to first degree burglary.

Simmons offered to stipulate to the "nighttime" element. After reviewing *State v. Benton*, 338 S.C. 151, 526 S.E.2d 228 (2000), the trial court denied Simmons' motion. The trial court limited the State to proving the prior record and ordered it not to go into the details.

At the end of the State's case, Simmons and the State agreed to stipulate that the jury could be told Simmons had "two or more prior convictions for either burglary or housebreaking." The stipulation was subject to Simmons' objections. The trial court read the stipulation to the jury:

> The State and the defense have entered into a stipulation that the defendant in this case has two or more prior convictions for either burglary or housebreaking. These convictions are as follows: 1981, three counts of housebreaking and in 1998 one count of burglary. Now, I will further instruct you that you are not to consider the prior convic-

tions about which I have just mentioned through the stipulation, you are not to consider these prior convictions as evidence that the defendant committed the crimes for which he is currently on trial nor should you consider the convictions as character evidence; that is, you should not conclude that because the defendant has been convicted of burglary and housebreaking previously that he is likely to have committed these offenses for which he is currently charged. You are to consider these prior convictions simply as part of the elements that the State must prove in order to make out a charge of first degree burglary. And I'll tell you the law on first degree burglary at the conclusion of the case when I am instructing you in the law.

After the jury instruction, Simmons renewed his motions.

First degree burglary is defined, in part, as follows:

(A) A person is guilty of burglary in the first degree if the person enters a dwelling without consent and with intent to commit a crime in the dwelling, and either:

 . . . .

(2) the burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or

(3) the entering . . . occurs in the nighttime.

S.C.Code Ann. § 16–11–311 (Supp.2001).

▇▇▇▇ The State is required to prove all the elements of first degree burglary beyond a reasonable doubt. *State v. Benton,* 338 S.C. 151, 526 S.E.2d 228 (2000). "[B]ecause two prior burglary and/or housebreaking convictions are an element of first degree burglary under § 16–11–311(A)(2), the defendant cannot require the State to stipulate to the prior convictions in lieu of informing the jury about the prior convictions." *Id.* at 155, 526 S.E.2d at 230; *see also State v. James,* 346 S.C. 303, 307, 551 S.E.2d 591, 592 (Ct.App.2001), *cert. granted* (Nov. 15, 2001) (the State cannot be forced to "stipulate generally to the prior offenses or to the fact that the defendant had the legal status to be charged with first degree burglary because such a stipulation might cause a substantial gap in the evidence needed for the jury to find the defendant guilty of the offense."); *State v. Hamilton,* 327 S.C. 440, 443, 486 S.E.2d 512, 513 (Ct.App.1997) (finding "the two prior convictions were an element of the crime for which Appellant

was charged. As such, the State was required to prove the two prior convictions and could not be forced to accept Appellant's offered stipulation.").

 However, to ensure that the defendant is not convicted on an improper basis while allowing the State to prove the elements of first degree burglary, the trial court should limit the evidence to the prior burglary and/or housebreaking convictions. *Benton*, 338 S.C. at 156, 526 S.E.2d at 230–31. Detailed, particular information about the prior burglaries and/or housebreaking convictions should not be admitted. *Id.* In addition, the trial court should, on request, instruct the jury that the information should only be considered for the limited purpose of proving one of the elements of first degree burglary. *Id.*

This Court recently considered an identical argument in *State v. Cheatham*, 349 S.C. 101, 561 S.E.2d 618 (Ct.App.2002). In *Cheatham*, the defense offered to stipulate that the burglary occurred in the nighttime and moved in limine to prohibit the State from introducing the defendant's three prior burglary convictions. The trial court denied Cheatham's motion and allowed the State to introduce evidence of both the "nighttime" and the "prior record of two or more convictions for burglary" elements of first degree burglary. The Court articulated:

It is well settled the admission of prior burglary or housebreaking convictions for limited consideration as an element of first degree burglary does not constitute undue prejudice. Thus, the admission of Cheatham's prior burglary and housebreaking convictions as an element of first degree burglary does not constitute unfair prejudice in this case. Further, the trial judge specifically instructed the jury not to consider Cheatham's prior convictions as evidence of the Patel burglary and to limit their consideration of the prior convictions to whether an element of first degree burglary was proven. We find no error in the admission of the convictions because the trial court took every precaution to prevent the improper consideration of Cheatham's convictions and to guard against undue prejudice.

Moreover, we find no merit to Cheatham's assertion that because he was willing to stipulate to the "nighttime" element of first degree burglary, the State should have been

limited to proving only the "nighttime" element and it was unnecessary for the State to present any evidence of the "two or more convictions of burglary or housebreaking" element. As previously discussed, the State is not required to accept a defendant's stipulation of proof because the State still bears the burden of proving every element of a crime beyond a reasonable doubt. Despite Cheatham's attempt to stipulate that he met the legal status to be charged with first degree burglary, we believe the trial court did not err in denying his request to limit the State to proof of only the "nighttime" element.

*Cheatham*, 349 S.C. at 109–110, 561 S.E.2d at 623 (internal citation omitted).

As in *Cheatham*, Simmons maintains the State should have been prohibited from submitting evidence of his prior burglary/housebreaking convictions because evidence existed that the present burglary occurred at night. The trial court did not err in allowing the State to introduce evidence of Simmons' prior burglary/housebreaking convictions because proof of such prior convictions constitutes an element of first degree burglary. Because the State bears the burden of proof, it was not required to prove only the "nighttime" element of first degree burglary. Further, Simmons agreed to stipulate to the convictions and their admission.

Simmons claims his prior housebreaking convictions should not have been admitted because they were more than ten years old. Whether a conviction should be admitted at trial due to its age is a question most often seen in evaluations of impeachment evidence under Rule 609, SCRE. In this instance, a record of a prior conviction is an *element* of the statutory crime. There is no requirement in the statute that the prior conviction be of a certain age in order to allow admission. There is no merit to Simmons' argument.

The trial court properly limited the introduction of Simmons' prior burglary/housebreaking convictions to listing the conviction. The jury was not informed of the specific details of the crimes or convictions. Finally, the jury was instructed that they should consider the convictions only as proof of an element of first degree burglary and that they were not to consider the convictions as proof that Simmons was guilty of the current crime. We find no error.

## CONCLUSION

We hold that where the offenses charged in separate indictments are of the same general nature, involving connected transactions, closely related in kind, place and character, the trial judge has discretion to order the indictments tried together, over the objection of a defendant, absent a showing that the defendant's substantive rights were violated.

The joinder of offenses in one trial is proper if the offenses (1) are of the same general nature or character and spring from the same series of transactions; (2) are committed by the same offender; and (3) require the same or similar proof.

The trial court did not abuse its discretion in refusing to sever the two burglary charges against Simmons. Both indictments arose out of a single chain of events, were of the same nature, and were proved by the same evidence and witnesses. Furthermore, evidence of the Brooks burglary was necessary for full presentation of the case without fragmentation. The trial judge did not err in denying Simmons' motion for a mistrial. Moreover, the judge's curative instruction to disregard the evidence as to the Brooks burglary cured any alleged error in failing to declare a mistrial. Finally, the trial court properly allowed the State to present evidence of Simmons' prior burglary/housebreaking convictions as an element to support first degree burglary. Accordingly, Simmons' convictions are

**AFFIRMED.**

HEARN, C.J., and CURETON, J., concur.