THE STATE OF SOUTH CAROLINA

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State Respondent,
 
 
 

v.

 
 
 
 Anthony L. Mann Appellant.
 
 
 

Appeal From Charleston County
Daniel F. Pieper, Circuit Court Judge

Unpublished Opinion No. 2007-UP-016
Submitted January 1, 2007  Filed January 11, 2007

AFFIRMED

 
 
 
 Joseph L. Savitz, III,  of Columbia, for Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Derrick K. McFarland, all of Columbia; and Solicitor Ralph Hoisington, of Charleston, for Respondent.
 
 
 

PER CURIAM:    Anthony L. Mann appeals his convictions for murder and armed robbery.  We affirm.[1]
FACTS
On January 7th, 2002, Mann was riding in an automobile with Michael Crumb and Eric Zack, when he was paged by Beverly Blake.  Over a cellular phone, Blake explained to Mann that her roommate, Dante Tobias, was trying to pimp her out against her will.  She wanted to pack her belongings and leave Tobias and requested the men pick her up in their vehicle.  Additionally, Blake informed Mann that Tobias kept money and drugs inside a safe in his house, and the two made plans to steal those items from Tobias.  Mann, Crumb, and Zack first visited the residence of Peter Davies, where Mann obtained a gun.  Before proceeding to Tobias home, the three men stopped to allow Mann to test-fire the newly acquired weapon.    
Mann entered Tobias house first, followed shortly thereafter by Crumb, with Zack remaining in the car.  Upon entering the living room, Crumb saw Mann had the gun pointed to Tobias head and was arguing with him as to whether or not he was trying to prostitute Blake.  Following Manns demand, Tobias provided the combination to the safe; however, neither Blake nor Crumb was successful in their attempts to open it.  Eventually, Blake and Crumb filled trash bags with items from around the house and left.  As Crumb and Blake sat in the car, they heard a gunshot and a scream from Tobias.  Mann emerged from the home and informed the others he had shot Tobias in the leg.  However, contrary to what Mann told his comrades, Tobias lay dead.  He had not been hit in the leg but was struck by a bullet in his back that exited through his chest.  
The group then returned to Davies house, where they divided the loot.  Mann warned Zack and Crumb not to tell anyone about the days events.  At Davies request, Terrance Hudson appeared at the home and provided a ride to Davies, Blake, and Mann.  Although Hudson dropped all three of his passengers off at another vehicle in a parking lot some distance away, eventually all four of them ended up at the residence of Nicole OConnell.  Before leaving OConnells with Mann and Davies, Blake told her friend, Tiffany Mercado, that Mann would be giving her a ride to Mercados house.  Blake was never heard from or seen alive again.
On January 13th, 2002 the body of Beverly Blake was discovered in a secluded, wooded area.  She had been shot three times in the head, once in the back, and once in the chest.  Based on the condition of her body, the temperature, and other elements, her death was estimated as having occurred on or around January 7th.  She appeared to be wearing the same clothes she was wearing when last seen. 
Mann was later arrested and indicted for the armed robbery and murder of Tobias, as well as the murder of Blake.  The circuit court judge allowed the two murders to be joined in a single trial because, the evidence for the murder of victim number one, Dante Tobias, [was] necessary for a full presentation of the case charging the defendant of murder of victim number two, Beverly Blake.  The judge later stated, Because of the first, he had to do the second.  
The trial court held two hearings concerning the prosecutions request that it be allowed to consolidate Manns indictments.  The State argued the evidence of crimes was intertwined and that evidence of either murder was necessary to prove the other.  Conversely, Mann argued the two murders did not arise out of the same chain of circumstances and that South Carolina does not allow the joinder of two murder cases.
The trial judge ultimately found:

 The allegations are victim number one lived with victim number two.  Victim number two and the defendant conspired to rob victim number one.  Victim number two heard a shot while the defendant was the only person with victim number two and the defendant shot victim number two . . . . 
 The evidence that the State uses to prove the murder of victim number one, Dante Tobias, will most likely be admissible to show that the defendants alleged motive for murdering victim number two, Beverly Blake, thats under the theory the State advances.  Of course, in a preliminary determination pretrial if that turns out to not to be the case, I will have to take up any appropriate remedies at that time. 

In addition to testimony establishing the facts as described above, a number of witnesses testified as to Manns behavior and particular statements made after the death of Tobias.  Zack testified Mann told him that he planned to get rid of Blake.  Shannon Keyes, a friend of Manns, received a call from Mann following the murders.  According to Keyes, Mann indicated, [he and Blake] went go do something and it didnt turn out the way it was supposed to, and he had to do what he had to and he had to lay low for awhile.  
Dustin James testified Mann indicated to him that he killed Blake because she knew Mann killed Tobias.  Mann also stated that Blake was in the woods.  Similarly, Krystal Lackey testified Mann said he found out that [Blake] had given some information and supposedly had told the police, and his words were that he had to kill that n-gg-r bitch.   
For a time, Mervin Menier shared a jail cell with Mann.  Consistent with the testimony from other witnesses, Menier testified Mann told him that he shot Tobias.  He also told Menier he shot and killed Blake in a secluded area that same night because she was getting nervous.  
At the conclusion of the States case, Mann moved for a mistrial on the basis the indictments were improperly joined.  After extensive discussions on the issue, the trial judge denied this motion.  
DISCUSSION
Mann avers the trial judge erred by allowing the State to consolidate the two murder charges into a single trial and claims the prosecution established no logical connection between the two homicides.  He contends joinder was prejudicial because it is likely the jury inferred a criminal disposition based on evidence he may have been involved in the murder of Blake, and, on that basis alone, found Mann guilty of Tobias murder.  We disagree.
When offenses charged in separate indictments are of the same general nature involving connected transactions closely related in kind, place, and character, the trial court has the discretion to order the indictments tried together, but only so long as the defendants substantive rights are not prejudiced.  State v. Cutro, 365 S.C. 366, 374, 618 S.E.2d 890, 894 (2005); State v. Sullivan, 277 S.C. 35, 282 S.E.2d 838 (1981).  [J]oinder of offenses in one trial is proper if the offenses (1) are of the same general nature or character and spring from the same series of transactions, (2) are committed by the same offender, and (3) require the same or similar proof.   State v. Simmons, 352 S.C. 342, 351, 573 S.E.2d 856, 861 (Ct. App. 2002) (citations omitted).  Offenses are considered to be of the same general nature where they are inter-connected.  State v. Harry, 321 S.C. 273, 468 S.E.2d 76 (Ct. App. 1996).  In determining joinder, the trial judge need not find clear and convincing evidence of the charges.  Cutro, 365 S.C. at 374, 618 S.E.2d at 894.  If the trial judge finds there is no substantial evidence to submit any one the joined charges to the jury, the defendant may move for a mistrial on the basis of unfair prejudice resulting from joinder.  Cutro, 365 S.C. at 375, 618 S.E.2d at 894; see also State v. Tate, 286 S.C. 462, 334 S.E.2d 289 (1985) (finding prejudice when two forgery charges, not provable by the same evidence, were improperly consolidated).      
Applying this criterion to the case at bar, there was no error.  Simply having two murders occur sequentially within a short span of time and within a small geographic boundary does not in itself determine that the crimes can be prosecuted in a single trial.  See State v. Middleton, 288, S.C. 21, 23-24, 339 S.E.2d 692, 693 (1986).  However, in this case the State demonstrated much more than a close proximity in time and place.  These offenses were of the same general nature and character and sprung from the same series of transactions.  Overwhelming evidence was presented that Mann committed the two murders.  See Simmons, 352 S.C. 342, 573 S.E.2d 856; State v. Carter, 324 S.C. 383, 386, 478 S.E.2d 86, 88 (Ct. App. 1996).  Evidence of the killing of Tobias was highly relevant in a review of Blakes murder.  In a Lyle context, evidence of one murder has a relevance to the other and is indicative of motive and intent.  See State v. Lyle, 125 S.C. 406, 118 S.E. 803 (1923).  Thus, similar proof was necessary to find that Mann committed both crimes.  
Mann cannot show any prejudice resulting from the trial judges decision to allow the State to consolidate the charges against him.  The trial court charged the jury that each indictment charges a separate and distinct offense.  You must decide each indictment on the law and evidence applicable to it.  A defendant may be acquitted or convicted on any or all of the offenses charged.  You will be asked to write a separate verdict as to each indictment.  Accordingly, there was no prejudice.
When placed in context of the States evidence, Blakes knowledge of Tobias shooting provided a motive for her murder.  At most, the events formed a seamless chain of actions played out over the span of a few hours, and at the least, the murders are intimately connected as the fallout from the first provided the very necessity for the second.  On the basis of the substantial evidence presented in this case, the trial judge properly allowed the charges to be consolidated and correctly denied Manns motion for a mistrial on the basis of improper joinder.
CONCLUSION 
Accordingly, the trial judge did not abuse his discretion by allowing the State to consolidate all the offenses in a single trial, and Manns convictions are
AFFIRMED.
ANDERSON, HUFF, and BEATTY, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.