744 S.E.2d 602

**The STATE, Respondent,**

v.

**Marshall McGAHA, Appellant.**

**Appellate Case No. 2011–197266.**
**No. 5149.**

Court of Appeals of South Carolina.

Heard May 8, 2013.
Decided June 26, 2013.

Appellate Defender Susan Barber Hackett, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Deputy Attorney General David A. Spencer, both of Columbia, for Respondent.

FEW, C.J.

Marshall McGaha was tried for sexually abusing two young children. A jury convicted him of criminal sexual conduct with

a minor in the first degree and lewd act upon a child as to each victim. On appeal, he argues the trial court erred in trying the charges related to both victims in the same trial. We affirm.

## I. Facts and Procedural History

The two victims are sisters, Dana and Elaina.[1] They lived with their grandmother, along with their great-grandmother, their older sister, and McGaha. The grandmother allowed McGaha, who was not a member of the family, to live in their home.

Dana testified that on multiple occasions, McGaha picked her up at night out of the bed she shared with her grandmother and took her to his bed in the play room, where he touched her "private" with his "wiener." He also put her hand on his "wiener," and, in her words, "put his wiener in my mouth and started peeing." He would then wipe off Dana's mouth with a sock. McGaha told her not to tell anyone.

Elaina also testified that on multiple occasions, McGaha picked her up at night out of the bed she shared with her great-grandmother and took her to the play room. While there, he would touch her "pocketbook"[2] with his hands. McGaha also made Elaina put her hands on his "front part" and hold it. After Elaina was unable to speak in response to several questions about "what would happen when he made you hold it," she testified, "He touched me with his front part in my mouth" and "made me suck it." She said McGaha "peed" in her mouth, and she would spit it out. McGaha told her not to tell anyone.

One weekend the children were visiting Jessica, a thirty-year-old relative whom they call their aunt. They approached Jessica together, and each one told her what McGaha had been doing to them in the play room. Jessica immediately drove them home and called the police. Investigator Heather Hubert and several other officers responded to the call. Hu-

---

1. These are not the victims' real names. To protect the victims' privacy, we are using names that have the same number of syllables and, like their real names, rhyme with each other.

2. The assistant solicitor had Elaina mark on a diagram of the body of a girl Elaina's age to demonstrate to the jury what she meant by "pocketbook."

bert spoke with both children, their sister, their grandmother, their great-grandmother, and Jessica. Both children told Hubert what McGaha had done to them in the play room. Dana, who was eight, said she had been assaulted since age seven. Elaina, who was seven, said she had been assaulted since age six. During a search of the home, officer Doug Smith found a pair of girl's underwear between the pillows on McGaha's bed.

The State charged McGaha with four crimes in four separate indictments—criminal sexual conduct and lewd act as to each victim. The State made a motion to try the four charges together, and McGaha asked for separate trials as to each victim. In a pre-trial hearing, the trial court granted the State's motion.

At trial, the State presented testimony from Dana, Elaina, the grandmother, Jessica, Smith, Hubert, and a pediatrician who physically examined the children for signs of sexual abuse. The jury also heard testimony from a forensic interviewer who interviewed each of them, and the State played video recordings of the interviews for the jury. McGaha testified he never touched the victims. He stated he had Hepatitis B and if he had molested them, he would have infected them.

The jury found McGaha guilty of all charges. The trial court sentenced him to life in prison on each criminal sexual conduct conviction and fifteen years, consecutive, on each lewd act conviction.[3]

## II. Whether the Trial Court Erred in Trying the Charges Together

Our supreme court has held that a trial court may try separate charges together "where they (1) arise out of a

---

**3.** McGaha was convicted of criminal sexual conduct with a minor in the first degree under South Carolina Code subsection 16–3–655(A)(1) (Supp.2012), which required he "must be imprisoned for a mandatory minimum of twenty-five years ... or must be imprisoned for life." S.C.Code Ann. § 16–3–655(D)(1) (Supp.2012) (formerly § 16–3–655(C)(1)). At the time of McGaha's crimes, lewd act upon a child carried no minimum sentence and a maximum of fifteen years. S.C.Code Ann. § 16–15–140 (2003) (repealed 2012). The crime that was lewd act is now classified as criminal sexual conduct with a minor in the third degree. S.C.Code Ann. § 16–3–655(C) (Supp.2012).

single chain of circumstances, (2) are proved by the same evidence, (3) are of the same general nature, and (4) no [substantive] right of the defendant has been prejudiced." *State v. Harris*, 351 S.C. 643, 652, 572 S.E.2d 267, 272 (2002); [4] *see also State v. Cutro*, 365 S.C. 366, 374, 618 S.E.2d 890, 894 (2005) (describing the fourth element as "the defendant's substantive rights are not prejudiced"). The trial court has discretion in deciding whether to try charges together, and its decision will be reversed only if there is no evidence to support it or it is controlled by an error of law. *Harris*, 351 S.C. at 652, 572 S.E.2d at 272; *State v. Rice*, 368 S.C. 610, 613, 629 S.E.2d 393, 394–95 (Ct.App.2006).

■ In this case, the trial court applied the test from *Harris* and made individual findings as to each element. Where appropriate, the trial court explained the factual basis for the finding. We find the trial court applied the law correctly, and there is a factual basis in the record to support each finding. Therefore, the trial court acted within its discretion to try the charges together.

---

4. In other cases, the supreme court has articulated the test differently. *See State v. Cutro*, 365 S.C. 366, 374, 618 S.E.2d 890, 894 (2005) ("[W]hen offenses charged in separate indictments are of the same general nature involving connected transactions closely related in kind, place, and character, the trial judge has the discretion to order the indictments tried together, but only so long as the defendant's substantive rights are not prejudiced." (footnote omitted)); *accord State v. Smith*, 322 S.C. 107, 109, 470 S.E.2d 364, 365 (1996). In both *Cutro* and *Smith*, however, the supreme court's decision turned only on the fourth element from *Harris*—whether the joint trial prejudiced the defendant. It was unnecessary in those cases, therefore, for the court to consider the first three elements. In other cases, our appellate courts have reviewed trial courts' decisions to try charges together using the test as stated in *Harris*. *See, e.g., State v. Tucker*, 324 S.C. 155, 164, 478 S.E.2d 260, 265 (1996); *City of Greenville v. Chapman*, 210 S.C. 157, 161–62, 41 S.E.2d 865, 867 (1947); *State v. Harry*, 321 S.C. 273, 278, 468 S.E.2d 76, 79 (Ct.App.1996); *State v. Tate*, 286 S.C. 462, 464, 334 S.E.2d 289, 290 (Ct.App.1985). Both versions of the test have a common origin in *Chapman*. *Compare Cutro*, 365 S.C. at 374, 618 S.E.2d at 894 (citing *McCrary v. State*, 249 S.C. 14, 152 S.E.2d 235 (1967), for the test); *Smith*, 322 S.C. at 109, 470 S.E.2d at 365 (same); *and McCrary*, 249 S.C. at 36, 152 S.E.2d at 246 (citing *Chapman*), *with Harris*, 351 S.C. at 652, 572 S.E.2d at 272 (citing *Tucker*); *Tucker*, 324 S.C. at 164, 478 S.E.2d at 265 (citing *Tate*); and *Tate*, 286 S.C. at 464, 334 S.E.2d at 290 (citing *Chapman*).

## A. Single Chain of Circumstances

■ The trial court properly began its analysis of this element by describing the chain of circumstances—"a series of connected transactions that allege and involve sexual abuse of the victims who had the same relationship to the defendant. . . . [T]he place where the abuse occurred was the same. . . ." The evidence supports the trial court's finding that the charges all arose from the circumstances the court described. McGaha gained access to the children because the grandmother allowed him to live in their play room. McGaha used this access on multiple occasions to take each child from her bed to the play room, where he molested her. Dana was eight and Elaina was seven when the abuse ended. The time periods of the abuse overlapped almost precisely—McGaha abused Dana between March 2009 and August 2010 and Elaina between May 2009 and August 2010. Their similar ages and the similar duration of the abuse supports the trial court's emphasis on its finding that they "had the same relationship to" McGaha. The molestation of each child during the same time period and in the same location, accomplished through the same access to them, established a sufficiently connected chain of circumstances to satisfy this element.

## B. Proven by the Same Evidence

The trial court found the charges would be proven "by the same evidence through the same witnesses." The record supports the trial court's finding.

■ The jury heard from several witnesses who provided testimony and other evidence that proved the charges as to both children. The grandmother testified she had custody of them for "about five years" at the time of trial, which occurred one year after the abuse ended. She testified she had known McGaha "between five and six years" and explained she allowed him to live in her home because he was a friend of her daughter and had nowhere else to stay. She also testified McGaha "was a pretty big help around the house," and at first, he got along "wonderful" with the children. She explained, "He took them places. He done things with them."

Jessica testified about her relationship with the children and its role in their disclosing the sexual abuse to her. She described them as "very, very sick kids" because they suffer from a disease that makes them "very slow mentally." She explained that every six weeks, she takes them to Augusta, Georgia, to see a specialist. Her testimony indicated she is very close to them. She began her description of the weekend they told her what McGaha had been doing to them by describing a conversation she had with them:

I ... went and picked them up on a Friday. I get them every chance that I can. And I was giving each of them an individual bath, having a woman-to-woman talk with them, because I feel like that's part of my responsibility.

And, as I was bathing and caring for them and giving them a heart-to-heart talk, I just threw in this statement, "y'all are little girls, and if anybody ever does anything to you, whether it be a girl or a boy, you need to tell somebody. They may tell you not to say nothing, but you need to tell somebody."

Jessica then testified, "The very next morning, the two of them came to me ... on my front porch." She then described what they told her about McGaha abusing them. She testified she "immediately" packed them up, took them home, and called the police. When the police arrived at their house, McGaha was asleep. Jessica testified that when he woke up "about two hours later, ... [h]e tried to go out the back door." Jessica heard McGaha say as he was trying to leave, "Oh, shoot. The police is here. I've got to get out of here."

Other witnesses also gave testimony that proved the charges related to both children. Officer Smith testified that during his investigation of the house, he found a pair of girl's underwear between the pillows of McGaha's bed. The underwear was admitted into evidence at trial. Investigator Hubert testified she interviewed the children and some of their family members, and after the children told her they had been sexually assaulted, she obtained a warrant for McGaha's arrest and arranged for physical examinations and forensic interviews. The pediatrician testified she performed "head to toe" physical examinations of both Dana and Elaina and tested them for sexually transmitted diseases, and the test results were negative. The pediatrician also testified during the

State's rebuttal, in response to McGaha's testimony that he would have given the children Hepatitis B if he had molested them, that because the children were up-to-date on their vaccinations they had "almost no risk at all" of getting the disease. Finally, to establish the foundation for admitting the forensic interviews into evidence, the forensic interviewer testified about what forensic interviewing is, her training in it, and the procedures she followed when she interviewed the children.

Thus, a substantial portion of the testimony the State presented at trial to prove the crimes against one child was the same evidence it would have used to prove the crimes against the other. Even though some of the evidence related to only one child, we find the evidence described above supports the trial court's determination that the separate charges would be proven by the same evidence. *See State v. Caldwell,* 378 S.C. 268, 278, 662 S.E.2d 474, 479–80 (Ct.App. 2008) (finding the same-evidence element met because, although the charges involved three separate children, which therefore required the State to present some individual evidence as to each of the charges, "much of the evidence produced at trial pertained to [all] of the separate charges").

## C. Same General Nature

■ The trial court correctly found that charges for criminal sexual conduct with a minor in the first degree and lewd act upon a child are of the same general nature. *See State v. Grace,* 350 S.C. 19, 23–24, 564 S.E.2d 331, 333 (Ct.App.2002) (finding three charges of criminal sexual conduct with a minor and one charge of lewd act upon a child were of the same general nature because they "were all sexual misconduct crimes"); *State v. Deal,* 319 S.C. 49, 50–51, 52, 459 S.E.2d 93, 94, 95 (Ct.App.1995) (finding charges of first-degree criminal sexual assault, second-degree criminal sexual conduct, assault with intent to commit criminal sexual assault, assault and battery of a high and aggravated nature, and exposing another to HIV were of the same general nature). The issue McGaha raises, however, is not whether charges of criminal sexual conduct and lewd act can be tried together. Rather, he argues the cases for the two separate victims were not of the same general nature. In this respect, the charges in the two

cases are not merely of the same general nature—they are identical.

## D. Prejudice

McGaha argues his substantive rights were prejudiced in a joint trial because evidence of the multiple charges improperly showed his propensity to commit similar crimes. The trial court found no substantive rights would be prejudiced. We agree.

In cases where the defendant argues prejudice from the admission of evidence of the other charges tried in the same case, our courts have analyzed whether evidence of one or more charges would be admissible in a trial involving only the other charge.[5] In this case, part of the State's argument for trying the charges together was that in separate trials, evidence of McGaha's molestation of the other child would be admissible under Rule 404(b), SCRE, as proof of a common scheme or plan. For the evidence to be admissible in separate trials for the purpose of showing a common scheme or plan, the State would have to establish a logical connection between the crimes by showing a "close degree of similarity." *State v.*

---

5. *See Cutro*, 365 S.C. at 376, 618 S.E.2d at 895 (finding defendant tried for two counts of homicide by child abuse and one count of assault and battery was not prejudiced because the evidence met the motive and common scheme or plan exceptions in Rule 404(b), SCRE); *Smith*, 322 S.C. at 110, 470 S.E.2d at 366 (finding defendant charged with homicide by child abuse and assault and battery of a high and aggravated nature (ABHAN) was prejudiced by joint trial because evidence of the ABHAN would not have been admissible in the homicide trial); *Deal*, 319 S.C. at 52–53, 459 S.E.2d at 95–96 (finding defendant was not prejudiced by trying charge of exposing another to HIV together with charges of criminal sexual conduct and assault and battery because evidence defendant had HIV was admissible as to the other charges). Federal courts have analyzed such arguments the same way. *See, e.g., United States v. Lane*, 474 U.S. 438, 450, 106 S.Ct. 725, 732, 88 L.Ed.2d 814, 826 (1986) (finding defendants were not prejudiced by trial of one charge together with several other charges, in part because evidence of the one charge "would likely have been admissible" in a trial of the other charges under Rule 404(b), FRE); *United States v. Foutz*, 540 F.2d 733, 736 (4th Cir.1976) (stating "[o]ne inevitable consequence of a joint trial is that the jury will be aware of evidence of one crime while considering the defendant's guilt or innocence of another" and "where evidence of one crime is admissible at a separate trial for another, it follows that a defendant will not suffer any additional prejudice if the two offenses are tried together").

*Wallace,* 384 S.C. 428, 434, 683 S.E.2d 275, 278 (2009); *see also* 384 S.C. at 434 n. 5, 683 S.E.2d at 278 n. 5 (stating the requirement of a connection between the crime charged and the evidence of the other crime "is simply a requirement that the two be factually similar"). In making such a similarity determination, a court should consider "(1) the age of the victims when the abuse occurred; (2) the relationship between the victims and the perpetrator; (3) the location where the abuse occurred; (4) the use of coercion or threats; [ ](5) the manner of the occurrence, for example, the type of sexual battery," and other factors that may be relevant in the case. 384 S.C. at 433–34, 683 S.E.2d at 278.

The record demonstrates that evidence of McGaha's crimes against each victim would be admissible in a separate trial as to the other. As we discussed above, McGaha used his access to the children, gained by living in their play room, to commit each crime. In addition, the children are approximately a year apart in age, and because they were abused in the same time frame, they were roughly the same age when the abuse occurred. Each child described similar acts that occurred in the same place: McGaha picked them up out of bed, took them into the play room, made them touch his penis with their hands, put his penis in their mouths, and ejaculated in their mouths. Dana testified McGaha would wipe off her mouth with a sock, and in her forensic interview, Elaina said McGaha would wipe off her mouth with the covers of his bed. Finally, they both testified McGaha told them not to tell anyone. This evidence establishes that McGaha's abuse of each child would likely be admitted into evidence in a separate trial of the other case.

## III. Conclusion

The trial court did not abuse its discretion in granting the State's motion for a joint trial on all four charges. Therefore, the decision of the trial court is **AFFIRMED.**

GEATHERS and LOCKEMY, JJ., concur.