**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Larry Tyler, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2016-002364

---

**ON WRIT OF CERTIORARI**

---

Appeal From Darlington County
G. Thomas Cooper, Jr., Circuit Court Judge

---

Opinion No. 5902
Heard November 4, 2020 – Filed March 16, 2022
Withdrawn, Substituted, and Refiled June 22, 2022

---

**AFFIRMED IN PART, REVERSED IN PART, AND
REMANDED**

---

Appellate Defender Victor R. Seeger and Appellate
Defender Laura Mary Caudy, both of Columbia, for
Petitioner.

Attorney General Alan McCrory Wilson, Senior
Assistant Deputy Attorney General Megan Harrigan
Jameson, and Assistant Attorney General Johnny Ellis
James, Jr., all of Columbia, for Respondent.

---

**MCDONALD:**  In this action for post-conviction relief (PCR), Larry James Tyler argues his trial counsel provided ineffective assistance by failing to move to sever the trial of his charge for second-degree sexual exploitation of a minor from the trial of his remaining indictments.  The PCR court found trial counsel was "not deficient in any manner" and dismissed Tyler's application.  We affirm in part, reverse in part, and remand.

**Facts and Procedural History**

A Darlington County Grand Jury indicted Tyler for second-degree sexual exploitation of a minor, criminal solicitation of a minor, contributing to the delinquency of a minor, and disseminating harmful material to a minor.  Tyler pled not guilty to these charges.

At Tyler's trial, the State's first witness, Dorris Brown, testified she occasionally took her granddaughters (Child and Sister) to visit Tyler's mother, who lived with him.  On one of these visits, Tyler gave the children a cell phone.  According to Dorris, "when they got in the car they said, 'Grandma, he gave us a phone and . . . [there are] naked men on there.'"  The children tried to show Dorris the cell phone, but she did not see any "naked pictures" and told them they needed to give the phone back to Tyler.  Within "about ten minutes," Dorris had returned the phone to Tyler's house.  On cross-examination, trial counsel asked, "Now, you said that they said there was a picture of a naked lady on the phone.  Did you see that picture?"  Dorris replied, "Yeah, I glanced and quickly turned my head. . . .  [Then, I g]ot the phone from them and [carried] it back in the house."

Child, who was twelve years old at the time of trial, also testified about the cell phone.  She had the phone for about ten minutes before the group left Tyler's house.  Child saw some pictures of a girl wearing bikinis and another of Tyler wearing blue underwear.  On cross-examination, Child confirmed she did not read any of the text messages on the phone and explained on redirect, "We just looked at the pictures."

Sister was ten years old at the time of trial.  Sister testified the pictures on the phone were of "[s]ome girls with bathing suits on."  One of the pictures was of Tyler "with some blue drawers on."  Neither Child nor Sister read any of the text messages on the phone.

Child's twenty-one-year-old cousin, Tyquan Brown, testified Tyler later gave his mother the cell phone and she gave it to Tyquan to use.  As Tyquan began "going

through the phone cleaning it out," he saw several pictures, including one of Tyler "in a blue Speedo."  Tyquan added, "I think I [saw] a picture of a kid, another kid, or something in there."  "But I deleted most of them because I just thought it was just some—that dude had just had a whole bunch of crazy stuff on his phone."  However, Tyquan also noticed several text messages on the phone "saved as drafts" that appeared to be intended for Child.  He explained,

> At the same time I'm thinking like maybe it's another [redacted first name].  Maybe he's not talking about my cousin.  Then I [saw] where he was like, "I know this is wrong because you're a little girl" and all type of stuff like that saying that—talking about he want her in his bed and that she a kid.  But what really stood out to me was when he was like, "Don't tell [Sister] because you know she will tell" or something like that.

Tyquan immediately called Child's mother (Mother) and gave her the phone.  Mother reviewed the pictures on the phone, including one of Tyler "with just a blue like Speedo on, and he didn't have on any over clothes."  Mother called the police after reading the draft text messages on the phone.

Deputy Eric Hodges, a lieutenant in the criminal investigation division of the Darlington County Sheriff's Office, met with Mother and then began to investigate Tyler.  Upon learning Tyler was driving with a suspended license, Deputy Hodges initiated a traffic stop and arrested Tyler on the license violation.  Hodges advised Tyler of his *Miranda* rights,[1] and Tyler agreed "to answer some questions."[2]  Deputy Hodges obtained a search warrant for Tyler's home and vehicle, and law enforcement recovered pictures from Tyler's computer and "some other phones."

Deputy Russell Harrell, a forensic investigator for the Darlington County Sheriff's Office, testified that he recovered the text message drafts from the cell phone but was unable to recover any pictures from it.  He then read the unsent text messages to the jury.  The first draft message stated, "[Child] . . . to fall in love with a little girl as young as you are, but I can't stop my heart from loving you, girl.  I wish I had another hour alone with you and nobody knew."  The second read, "Me in

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] The trial court admitted Tyler's recorded statement into evidence, and the State published it to the jury.

trouble.  Please, [Child] especially don't tell [Sister].  She will surely tell someone.  This is just between you and me, my love."  The third stated, "Never want to be apart from each other ever again.  I love you, little angle [sic].  Wish I could make you my wife.  If I could you—if I could you would be in my bed tonight.  Don't get me."  The fourth stated, "Where we were.  I would [tell] you how much I love you, [Child] by holding you close to me and plant a kiss on your lovely lips so powerful that we both would never."  Finally, Deputy Harrell read, "[Child] you were so beautiful.  Please don't tell anyone what I am telling you.  First time I ever saw you; [Child] I fell for you.  I know a man should not suppose."

Deputy Harrell then described the images pulled from Tyler's computer and email account, and the State entered these images into evidence without objection.[3]  He testified the photos are "predominantly of girls that are below the age of ten. . . .  They're posed in unnatural positions, and scant[i]ly clad.  Some with bare butts."  The most graphic of the photos is an image of "a young girl in a kneeling position, and anal sex is being performed."

In its instructions to the jury, the trial court explained "there are four different charges here, so you will have to take up each of the charges separately in your deliberations and reach separate verdicts on each and every charge."  The jury found Tyler guilty as indicted, and the trial court imposed concurrent sentences of three years' imprisonment for contributing to the delinquency of a minor and eight years' imprisonment for each of the other charges.  Tyler filed a direct appeal, and this court affirmed his convictions.  *State v. Tyler*, Op. No. 2015-UP-025 (S.C. Ct. App. filed Jan. 14, 2015) (finding the case was properly submitted to the jury because Tyler gave Child and Sister a cell phone containing a picture of Tyler in his underwear and draft text messages indicating his desire to have Child in his bed; the evidence further showed Tyler employed "grooming" tactics with Child).

Tyler subsequently filed this action for post-conviction relief, arguing trial counsel was ineffective in failing to object to the consolidated trial of the four offenses because his charge for second-degree sexual exploitation of a minor should have been tried separately from the charges of criminal solicitation of a minor, contributing to the delinquency of a minor, and disseminating harmful material to a minor.  Tyler contends that if the charges had been tried separately, the highly prejudicial photograph relevant to the sexual exploitation charge would not have

---

[3] None of the photographs recovered from Tyler's computer and email account depict Child or Sister, and the record contains no evidence that the two minor children saw these photos.

been admissible as to the other three charges; thus, the trial of all four charges in one proceeding prejudiced him.

At his evidentiary hearing before the PCR court, Tyler testified he wrote trial counsel several times asking to sever the charges, but trial counsel never made a motion for separate trials. Tyler argued the consolidated trial of the four charges was prejudicial because the jury likely considered his guilt on the sexual exploitation charge as indicative that he was guilty of the other offenses as well.

Trial counsel testified his strategy was to show the information on Tyler's phone was not actually disseminated to the girls. Counsel explained that Tyler's draft texts "were thoughts that were not meant to be shared with anybody and just inadvertently got discovered" by their cousin.[4] Trial counsel saw no reason to seek a separate trial of the sexual exploitation charge, explaining, "[B]ased on the theory that we had developed, first of all, the information we felt had not been sufficiently communicated to the young lady on the four [sic] charges dealing with her. And the exploitation, the pictures, except for one, we felt we could minimize."

On cross-examination, trial counsel reiterated his strategy was, "Number One, the pictures, except for one, were not bad. And, Number Two, there was very little if any communication of his thoughts in his e-mails and pictures and otherwise with the young ladies or the young lady specifically." Trial counsel confirmed he never filed a motion to sever or objected to the consolidated trial of Tyler's four indictments.

PCR counsel then asked trial counsel:

> Q: Do you think that with these two incidents or separate charges that there would have been a reason to make that motion [to sever]?
>
> A: Perhaps. I don't remember that being an issue that we discussed in detail. No.
>
> Q: Going along with that, perhaps, I guess what would your reason, looking at it, what would it be to make that request?

---

[4] Tyquan was at least nineteen when Tyler gave his mother the cell phone to use.

A:  Well, as [Tyler] says, you know, perhaps one would lead the jury to believe the other.

Q:  Do you think that that could have been the case in this case?

A:  I didn't see it.  No.

There is some confusion in the transcript about who speaks next, but it appears the State asked trial counsel whether the reason he did not see the need for a motion to sever was based on his experience and the facts of the case.  Trial counsel's response: "And the development of the trial strategy with Mr. Tyler, yes."

The PCR court then inquired:

Q:  Just how could you have separated [the four different indictments]? . . . .

A:  Three dealt with his attempted communication with the young lady, and one dealt with the picture.

Q:  We've got disseminating, contributing.

A:  And the solicitation of a minor.

Q:  Exploitation.

A:  In my mind the exploitation dealt with the picture of the young lady involved in a sexual act.  The disseminating, the solicitation of a minor and contributing all dealt with [Child].

Q:  So there is some distinction there?

A:  There is some distinction there, yes, sir.

Q:  Okay.  But in your mind was it a significant enough distinction on which a Court could separate these?

A:  I did not think so, Your Honor.

The PCR court denied relief and dismissed the application, finding Tyler's claim that trial counsel was ineffective in failing to move for a separate trial on the sexual exploitation charge was "without merit" because there was no reasonable basis upon which to make a motion for separate trials.  Relying on this conclusion, the PCR court found trial counsel's representation was not deficient.  The PCR court further found Tyler was not prejudiced by the trial of all four charges in a single proceeding because the trial court instructed the jury to consider each charge separately and "reach separate verdicts on each and every charge."

Tyler's PCR counsel filed a petition for a writ of certiorari pursuant to *Johnson v. State*, 294 S.C. 310, 364 S.E.2d 210 (1988), along with a motion to be relieved.  Tyler filed a pro se response to the court's *Johnson* letter and several supplemental letters.  This court denied counsel's request to be relieved and ordered briefing on the question of whether trial counsel was ineffective in failing to move to sever Tyler's second-degree sexual exploitation of a minor charge from the trial of his remaining charges.

**Standard of Review**

"Our standard of review in PCR cases depends on the specific issue before us." *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018).  "We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them."  *Id.* at 180.  "We review questions of law de novo, with no deference to trial courts."  *Id.* at 180–81, 810 S.E.2d at 839.

**Law and Analysis**

Tyler argues trial counsel was ineffective in failing to move for a separate trial of his charge for second-degree sexual exploitation of a minor because it was unrelated to the other charges, did not arise from the same set of circumstances, and could not be proved by the same evidence.  Tyler further notes the evidence providing the basis for the sexual exploitation charge would not have been admissible in a separate trial of the three charges related to Child and the cell phone.  Moreover, he contends trial counsel's failure to seek a separate trial on the sexual exploitation charge prejudiced him because the evidence relevant only to that charge—namely, the photograph of a child being anally assaulted—was improper propensity evidence and "impermissibly convinced the jury" he was guilty of the remaining charges.  We agree.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To prove ineffective assistance, a petitioner must prove trial counsel's performance fell below an objective standard of reasonableness, and but for counsel's errors, there is a reasonable probability the result in his trial would have been different. *Id.* at 691–94; *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008) ("In order to establish a claim for ineffective assistance of counsel, the applicant must show that: (1) counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) counsel's deficient performance prejudiced the applicant's case."). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700.

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* In determining whether "the identified acts or omissions were outside the wide range of professionally competent assistance. . . . , the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.* "At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "Accordingly, when counsel articulates a valid reason for employing a certain strategy, such conduct will not be deemed ineffective assistance of counsel." *Smith v. State*, 386 S.C. 562, 567, 689 S.E.2d 629, 632 (2010).

"Charges can be joined in the same indictment and tried together where they (1) arise out of a single chain of circumstances, (2) are proved by the same evidence, (3) are of the same general nature, and (4) no real right of the defendant has been prejudiced." *State v. Harris*, 351 S.C. 643, 652, 572 S.E.2d 267, 272 (2002). "Conversely, offenses which are of the same nature, but which do not arise out of a single chain of circumstances and are not provable by the same evidence may not properly be tried together." *State v. Simmons*, 352 S.C. 342, 350, 573 S.E.2d 856, 860 (Ct. App. 2002); *see also State v. Middleton*, 288 S.C. 21, 23, 339 S.E.2d 692, 693 (1986) (holding the defendant's charges failed to meet the requirements for

consolidation because "the crimes did not arise out of a single chain of circumstances, and required different evidence for proof"); *State v. Tate*, 286 S.C. 462, 464, 334 S.E.2d 289, 290 (1985) (finding the joinder of two forgery charges of the same nature in one indictment and one trial was improper where the offenses did not arise out of a single chain of circumstances, the offenses were not provable by the same evidence, and joinder prejudiced the defendant).

Here, the PCR court erred in relying on its finding that, "Trial Counsel noted that all charges stemmed from the same events and one search warrant." The record does not support this finding. While the exploitative photos from Tyler's computer were located during the execution of a search warrant obtained as a result of the draft texts and photos reported in connection with the cell phone, no other evidence supports the statement that the exploitation charge resulting from the computer photos "stemmed from the same events." Trial counsel recognized the distinction when specifically questioned about it.

Our case law addressing trials of separate charges in consolidated proceedings demonstrates the error in Tyler's case. In *State v. McGaha*, 404 S.C. 289, 299, 744 S.E.2d 602, 607 (Ct. App. 2013), this court found the trial court properly permitted the trial of McGaha's charges in a single proceeding. Examining the *Harris* test, the court reiterated that "a trial court may try separate charges together" when all four elements of the test are met. *Id.* at 293–294, 744 S.E.2d at 604. The court further recognized that our supreme court has, at times, articulated the test differently, addressing only the "fourth element from *Harris*—whether the joint trial prejudiced the defendant. It was unnecessary in those cases, therefore, for the court to consider the first three elements." *Id.* at 294 n.4, 744 S.E.2d at 604 n.4; *see also State v. Cutro*, 365 S.C. 366, 375–76, 618 S.E.2d 890, 895 (2005) (holding three offenses similar in kind, place, and character—each involving Shaken Baby Syndrome inflicted on infants at a defendant's daycare—fit within the *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923) exceptions for common scheme or plan or motive; thus, the charges were properly tried jointly and defendant suffered no propensity prejudice); *State v. Nelson*, 331 S.C. 1, 6–7, 501 S.E.2d 716, 719 (1998) (reversing the defendant's convictions for criminal sexual conduct (CSC) and committing lewd acts on a minor because children's toys, videos, photographs of young girls, and other evidence tending to depict him as a pedophile were improperly admitted at trial); *State v. Smith*, 322 S.C. 107, 110–11, 470 S.E.2d 364, 365–66 (1996) (reversing homicide conviction because failure to sever charges prejudiced the defendant and finding conviction for assault and battery of a high and aggravated nature would not be admissible under *Lyle* as evidence of other relevant crimes in subsequent trial on homicide charge); *Lyle*, 125 S.C. at

406, 118 S.E. at 811–13 (discussing permissible uses of bad acts evidence and noting prejudicial nature of evidence submitted solely to establish propensity).

McGaha was alleged to have committed first-degree CSC and lewd acts upon two minor sisters. *McGaha*, 404 S.C. at 291–92, 744 S.E.2d at 603. In finding the trial court properly held McGaha's abuse of both minors stemmed from a single chain of circumstances, the court noted:

> McGaha gained access to the children because the grandmother allowed him to live in their [playroom]. McGaha used this access on multiple occasions to take each child from her bed to the [playroom], where he molested her. [Child 1] was eight and [Child 2] was seven when the abuse ended. The time periods of the abuse overlapped almost precisely—McGaha abused [Child 1] between March 2009 and August 2010 and [Child 2] between May 2009 and August 2010. Their similar ages and the similar duration of the abuse supports the trial court's emphasis on its finding that they "had the same relationship to" McGaha. The molestation of each child during the same time period and in the same location, accomplished through the same access to them, established a sufficiently connected chain of circumstances to satisfy this element.

*Id.* at 295, 744 S.E.2d at 605.

The charges in McGaha's two cases were "not merely of the same general nature— they [were] identical." *Id.* at 297–98, 744 S.E.2d at 606. And it is significant that McGaha's charges were proved by the same evidence. *Id.* The court held, "a substantial portion of the testimony the State presented at trial to prove the crimes against one child was the same evidence it would have used to prove the crimes against the other." *Id.* at 297, 744 S.E.2d at 606. The State correctly argued evidence of McGaha's molestation of either child would be admissible in a separate trial as to the other under Rule 404(b), SCRE, as proof of a common scheme or plan in that there existed a logical connection between the crimes due to the showing of a "close degree of similarity." *Id.* at 298, 744 S.E.2d at 607.

In *State v. Tallent*, 430 S.C. 438, 442, 845 S.E.2d 508, 510 (Ct. App. 2020), *cert. denied*, S.C. Sup. Ct. order dated March 9, 2021, the defendant argued the circuit

court erred in denying his motion to sever his charge for contributing to the delinquency of a minor from the consolidated trial of other indictments alleging he sexually abused his minor stepdaughter for several years.[5]  Tallent claimed the charges did not arise from the same set of circumstances and the admission of evidence that he provided drugs and alcohol to his stepdaughter and her minor brothers was unduly prejudicial and would be otherwise inadmissible in a separate trial of his CSC and lewd act charges.  *Id.* at 445, 845 S.E.2d 511–12.  This court rejected Tallent's arguments and affirmed his convictions because:

> First, Tallent's abuse of stepdaughter covered a period of years in various homes where the family lived.  During parts of this same period, Tallent supplied stepdaughter and her brothers with illegal drugs and alcohol.  He also taught the brothers how to manufacture crack cocaine during this same time period.  Although the charges did not arise out of a single isolated incident, the CSC, lewd act, and contributing to the delinquency of a minor charges "arose from, in substance, a single course of conduct or connected transactions."  In short, there was evidence that this improper conduct was continuous and spanned several years.
>
> Second, the charges were proved by common evidence.  All four charges were proved by the same witnesses— stepdaughter and her brothers.
>
> Third, the charges were of the same general nature.  The State presented evidence showing Tallent abused stepdaughter in the same locations and during the same time periods that he supplied her and her younger brother (the only brother mentioned in the indictment) with drugs and alcohol.
>
> The State's witnesses also testified Tallent's providing stepdaughter with marijuana and alcohol was evidence of

---

[5] Tallent also argued the circuit court erred in admitting evidence of his manufacture, sale, and use of cocaine, crack cocaine, and methamphetamine in violation of Rule 403, SCRE, as the probative value of this drug evidence was substantially outweighed by its prejudicial effect.  *Id.*

Tallent "grooming" stepdaughter so he could abuse her. Although the charges in this case technically differ from each other in that some were sexual in nature and the contributing to the delinquency of a minor charge was drug-related, all are more broadly of the same general nature and could be fairly characterized as involving abusive conduct toward minors.

Fourth, and critically, it is hard to say the joinder of these charges caused unfair prejudice. Tallent contends he was harmed by the drug evidence because it was not relevant to the CSC and lewd act charges. But the test is not so narrow, and precedent says "there may be evidence that is relevant to one or more, but not all, of the charges."

*Id.* at 430 S.C. at 446–47, 845 S.E.2d at 512–13 (internal citations omitted).

Unlike the circumstances in *McGaha* and *Tallent*, Tyler's charges did not all arise from a single course of conduct, connected transactions, or a course of continuous grooming-related conduct. The charge for second-degree sexual exploitation of a minor arose from Tyler's possession of photographs, found on his computer and in connection with his email account, depicting young girls engaged in provocative poses or sexual activity. The three other indictments arose from the pictures and text messages found on the cell phone he gave Child, Sister, and Tyquan. The only connection between the sexual exploitation offense and Tyler's other three offenses was the fact that law enforcement found the exploitative pictures on his computer while executing a search warrant obtained during the investigation of the deleted photos and draft messages from the cell phone.

Additionally, the evidence the State needed to prove the exploitation offense—the photographs from the computer and email account—was distinct from that used to prove Tyler's other offenses—the text messages from the cell phone and testimony about the messages and pictures on the phone. Thus, the exploitation charge should have been tried separately, and trial counsel was deficient in failing to seek separate trials. *See Simmons*, 352 S.C. at 350, 573 S.E.2d at 860 (holding "offenses which are of the same nature, but which do not arise out of a single chain of circumstances and are not provable by the same evidence may not properly be tried together").

In the present case, Tyler took photographs of Child and her family, none of which were alleged to be criminal in nature, and drafted text messages on his phone in which he inappropriately professed his feelings for her. Such conduct was most definitely "odd" and "creepy," as described by trial counsel in his closing argument. However, the State's introduction of the photograph from Tyler's computer depicting an unrelated young girl being anally assaulted emphasized Tyler's behavior was not just "odd" or "creepy," but that of a sexual predator.

Tyler's substantive rights were violated because trying the charges together created the risk that the jury would wrongfully convict him on one set of charges based on evidence admissible only as to the other. Such prejudice could have been avoided had trial counsel sought a separate trial of Tyler's exploitation charge because the highly prejudicial evidence—the photo and other provocative images from Tyler's computer—would not have been admissible in a trial on the three charges related to Child and the cell phone. *See State v. Perry*, 430 S.C. 24, 37 n.6, 842 S.E.2d 654, 661 n.6 (2020) (noting that while "dissimilarities between charged crimes are not integral to the joinder analysis, the State's choice to try them together made their dissimilarity directly related to the Rule 404(b) analysis"); *McGaha*, 404 S.C. at 298, 744 S.E.2d at 606 ("In cases where the defendant argues prejudice from the admission of evidence of the other charges tried in the same case, our courts have analyzed whether evidence of one or more charges would be admissible in a trial involving only the other charge."); Rule 404(b), SCRE ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent.").

At the PCR hearing, trial counsel testified he did not see any reason to seek separate trials, and no evidence supports that his analysis was related to a valid strategic decision. *Contra Smith*, 386 S.C. at 567, 689 S.E.2d at 632 ("[W]hen counsel articulates a *valid* reason for employing a certain strategy, such conduct will not be deemed ineffective assistance of counsel." (emphasis added)). Trial counsel acknowledged the unrelated photo of a young girl engaged in a sex act "was an awful picture" but did not explain how he thought he could minimize its impact or why this was a reasonable tactic. Trial counsel admitted when asked about the sexual exploitation charge in relation to the three indictments involving Child that "perhaps one would lead the jury to believe the other." He further agreed with the PCR court that there was "some distinction" between the charges, adding, "three dealt with his attempted communication with the young lady, and one dealt with the pictures. . . . In my mind the exploitation dealt with the picture

of the young lady involved in a sexual act.  The disseminating, the solicitation of a minor and contributing all dealt with [Child]."

While our supreme court's decision in *State v. Cross*, 427 S.C. 465, 832 S.E.2d 281 (2019), addressed bifurcation rather than a consolidated trial, we find the court's analysis instructive here.  In 2013, Cross was indicted for first-degree CSC with a minor.  *Id.* at 469, 832 S.E.2d at 283.  As Cross had pled guilty to a previous charge of first-degree CSC with a minor in 1992, the State used the 1992 conviction as the predicate element supporting the 2013 first-degree CSC charge.  *Id.* at 470, 832 S.E.2d at 283–84; s*ee* S.C. Code Ann. §16-3-655(A) (2015) ("A person is guilty of criminal sexual conduct with a minor in the first degree if: . . . . (2) the actor engages in sexual battery with a victim who is less than sixteen years of age and the actor has previously been convicted of, pled guilty or nolo contendere to, or adjudicated delinquent for an offense listed in Section 23-3-430(C) or has been ordered to be included in the sex offender registry pursuant to Section 23-3-430(D).").

In a pretrial hearing, Cross moved to bifurcate the 2013 trial, requesting that the lewd act charge and sexual battery element of first degree CSC with a minor be tried first; then, if the jury concluded Cross was guilty of the sexual battery alleged in the indictment, evidence of the 1992 conviction and Cross's sex offender registry status could be introduced to prove section 16-3-655(A)(2)'s prior conviction element.  *Cross*, 427 S.C. at 470, 832 S.E.2d at 284.  Cross argued he would be prejudiced if the jury were to learn of his 1992 conviction and registry status in the same trial phase addressing his conduct against the minor victim in the 2013 case because the evidence of his prior conduct against another child would cement his "predilection" for such offenses.  *Id.*  The trial court disagreed and denied bifurcation; Cross was convicted and sentenced to an aggregate term of twenty-five years' imprisonment.  *Id.* at 473, 832 S.E.2d at 285.

Our supreme court reversed and remanded for a new trial, finding the probative value of the 1992 conviction—at the point in the trial at which it was introduced—was substantially outweighed by the danger of unfair prejudice and "that prejudice would have been totally eliminated had the trial been bifurcated."  *Id.* at 482, 832 S.E.2d at 290.  The court recognized "evidence of Cross's 1992 conviction for first-degree CSC with a minor had insurmountable probative value in proving the prior conviction element of the 2013 charge.  However, evidence of the 1992 conviction was in no way probative of whether Cross committed the underlying sexual battery" at issue in the 2013 trial.  *Id.* at 477, 832 S.E.2d at 287–88.  The court determined the danger of the jury convicting Cross because of his 1992

conviction alone was so high, the trial court should have prevented the jury from hearing of it until the jury reached a verdict on the underlying conduct alleged in the indictment. *Id.* at 477–78, 832 S.E.2d at 288.

The same danger arose here when the highly prejudicial photo supporting Tyler's sexual exploitation charge was admitted as evidence before the same jury considering his unrelated charges involving Child. It is difficult to imagine how such an image could *not* influence a jury, and the likelihood that the jury convicted Tyler on the three charges involving Child based on evidence inadmissible as to those charges and introduced to support only the separate sexual exploitation charge is not a danger we can ignore.

The fact that the evidence of Tyler's guilt for disseminating harmful material to a minor was marginal adds to the likelihood that Tyler was prejudiced by the trial of all four charges in one proceeding. The relevant statute provides that the minor must be exposed to "material or performance that depicts sexually explicit nudity or sexual activity." S.C. Code Ann. § 16-15-375(1) (2015). Although Child and Sister initially told Dorris there were "naked" pictures on the cell phone, they clarified at trial that the pictures were of girls wearing bikinis and Tyler wearing blue underwear. Likewise, both Tyquan and Mother testified Tyler was wearing "a blue Speedo."

We are bound by the language of the statute, and although providing a phone with bikini and Speedo pictures to the children was inappropriate, the photos did not depict "sexually explicit nudity" or "sexual activity." Thus, it appears the jury's guilty verdict on the dissemination charge was likely based on the evidence admitted on the sexual exploitation charge. At least one of the photos recovered from Tyler's computer and email account most certainly depicted "sexually explicit nudity or sexual activity," but there is no evidence that those photos were ever disseminated to Child or Sister. *See, e.g.*, *Tate*, 286 S.C. at 464, 334 S.E.2d at 290 (finding joinder prejudicial where it is likely a jury would infer criminal disposition based on evidence of one forgery and on that basis alone find defendant guilty of a separate forgery). The prejudicial impact of the computer photos likewise undermines confidence in the jury's consideration of Tyler's charges for criminal solicitation of a minor and contributing to the delinquency of a minor. For these reasons, trial counsel's failure to move for a separate trial on the sexual exploitation charge constituted deficient performance that prejudiced Tyler.

**Conclusion**

Based on the foregoing, we find the evidence does not support the PCR court's dismissal of Tyler's action as it relates to his charges of criminal solicitation of a minor, contributing to the delinquency of a minor, and disseminating harmful material to a minor.  Thus, we reverse these three convictions and remand to the court of general sessions for a new trial.  However, as the computer photographs were properly admitted as to the sexual exploitation charge, we affirm Tyler's conviction for second-degree sexual exploitation of a minor.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**KONDUROS, J. and LOCKEMY, A.J. concur.**